1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FEDERAL TRADE COMMISSION;
AND CALIFORNIA DEPARTMENT
OF FINANCIAL PROTECTION &
INNOVATION,

                    Plaintiffs,

     v.

GREEN EQUITABLE SOLUTIONS, a
corporation, also d/b/a ACADEMY
HOME SERVICES;

SOUTH WEST CONSULTING
ENTERPRISES, INC., a corporation,
also d/b/a ACADEMY HOME
SERVICE, ATLANTIC PACIFIC
SERVICE GROUP, GOLDEN HOME
SERVICES OF AMERICA
ENTERPRISES, and HOME MATTERS
USA;

APEX CONSULTING & ASSOCIATES
INC., a corporation, also d/b/a GOLDEN
HOME SERVICES AMERICA and
HOME MATTERS USA
CONSULTING;

Case No. 2:22-cv-06499-FLA (MARx)

**ORDER GRANTING PLAINTIFFS'
REQUEST FOR PRELIMINARY
INJUNCTION WITH ASSET
FREEZE AND EXTENDING
AUTHORIZATION OF
TEMPORARY RECEIVER
THROUGH THE PENDENCY OF
THE ACTION [DKT. 25]**

1
2
3
4
5
6
7
8
9
10
11
12

INFOCOM ENTERTAINMENT LTD,
INC., a corporation, also d/b/a AMSTAR
SERVICE GROUP, ATLANTIC
PACIFIC SERVICE, and HOME
RELIEF SERVICE OF AMERICA;

DOMINIC AHIGA, a/k/a MICHAEL
DOMINIC GRINNELL, individually
and as an officer of GREEN
EQUITABLE SOLUTIONS, SOUTH
WEST CONSULTING ENTERPRISES,
INC., and APEX CONSULTING &
ASSOCIATES INC.;

AND ROGER SCOTT DYER,
individually and as an officer of SOUTH
WEST CONSULTING ENTERPRISES,
INC., and INFOCOM
ENTERTAINMENT LTD, INC.,

13
14
15

                    Defendants.

16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs Federal Trade Commission and California Department of Financial Protection and Innovation (collectively, "Plaintiffs") have filed a Complaint for Permanent Injunction, Monetary Relief, and Other Relief pursuant to (1) Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), 57b; (2) the 2009 Omnibus Appropriations Act, Public Law 111-8, Section 626, 123 Stat. 524, 678 (Mar. 11, 2009), as clarified by the Credit Card Accountability Responsibility and Disclosure Act of 2009, Public Law 111-24, Section 511, 123 Stat. 1734, 1763-64 (May 22, 2009), and amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law 111-203, Section 1097, 124 Stat. 1376, 2102-03 (July 21, 2010), 12 U.S.C. § 5538; (3) the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6101 et seq.; (4) the COVID-19 Consumer Protection Act ("CCPA"), Public Law No. 116-260, 134 Stat. 1182, Title XIV, § 1401; and (5) the California Consumer Financial Protection Law ("CCFPL"), Cal. Fin. Code § 90000 et seq. against Defendants (a) Green Equitable Solutions, also doing business as Academy Home Services; (b) South West Consulting Enterprises, Inc., also doing business as Academy Home Service, Atlantic Pacific Service Group, Golden Home Services of America Enterprises, and Home Matters USA; (c) Apex Consulting & Associates Inc., also doing business as Golden Home Services America and Home Matters USA Consulting; (d) Infocom Entertainment Ltd, Inc., also doing business as Amstar Service Group, Atlantic Pacific Service, and Home Relief Service of America; (e) Dominic Ahiga, also known as Michael Grinnell; and (f) Roger Scott Dyer (collectively, "Defendants").

On September 12, 2022, Plaintiffs filed an Ex Parte Application for a temporary restraining order ("TRO Application"), requesting the court to (1) enjoin Defendants from engaging in the conduct alleged in the Complaint, (2) freeze Defendants' assets, authorize expedited discovery, and (3) appoint a temporary receiver over Defendants to preserve their assets for consumer redress.  Dkt. 9.  On September 14, 2022, the court (1) granted Plaintiffs' Application, (2) appointed David P. Stapleton of Stapleton

1  Group (the "Receiver") as temporary receiver of the Receivership Entities, with the
2  full powers of an equity receiver, and (3) Ordered Defendants to appear before the
3  court on September 28, 2022, at 9:00 a.m., to show cause ("OSC") why the court
4  should not enter a preliminary injunction against Defendants, pending the court's final
5  ruling on the Complaint, enjoining the violations of law alleged in the Complaint,
6  continuing the freeze of Defendants' assets, and imposing such additional relief as
7  may be appropriate.  Dkt. 25 ("September 14, 2022 Order").

8         On September 26, 2022, Plaintiffs filed a supplemental brief in support of the
9  OSC, as well as proof of service on Defendants of the Complaint, the TRO
10  Application, and the court's September 14, 2022 Order.  Dkt. 30-34, 37-1, 37-2.  That
11  same date, the Receiver filed an Initial Report and Recommendations ("Initial
12  Report") (1) stating his document recovery and review efforts and asset identification
13  and recovery efforts remained incomplete, (2) recommending the court authorize the
14  Receiver to continue to perform his duties as established under the September 14,
15  2022 Order, and (3) requesting leave to submit an additional First Interim Report
16  within eight (8) weeks of the submission of the Initial Report, to address any progress
17  made and conclusions reached by the Receiver and supplement his recommendations
18  to the court.  Dkt. 36 at 2-3.  Defendants did not submit a response to the OSC.

19         The OSC came to hearing on September 28, 2022 at 9:00 a.m., with Plaintiffs
20  and the Receiver present.  Defendants did not appear at the hearing.  After considering
21  all relevant documents in the record, Plaintiffs and the Receiver's statements at the
22  hearing, and Defendants' failure to file an opposition or to appear for the hearing on
23  the OSC, the court finds good cause exists to GRANT Plaintiffs' request for a
24  preliminary injunction and to authorize the Receiver to continue to perform his duties,
25  as established under the September 14, 2022 Order.  The Receiver shall submit a First
26  Interim Report within 60 days of this Order.

27         At the hearing, Plaintiffs requested additional time to file an amended
28  complaint.  After reviewing and considering the record and in light of the evidence of

Defendants' failure to comply with the court's September 14, 2022 Order and continued practice of the fraudulent conduct alleged, the court finds good cause exists to GRANT Plaintiffs' request and EXTENDS Plaintiffs' deadline to file an amended complaint to October 28, 2022.

**FINDINGS OF FACT**

Having considered the Complaint, the TRO Application and declarations, exhibits, and the memorandum of points and authorities filed in support thereof, the Receiver's Initial Report, Plaintiffs' supplemental brief, and the Receiver and Plaintiffs' statements at the OSC hearing, the court finds that:

A.    The court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over all parties hereto and that venue in this district is proper.

B.    Since at least June 2018, Defendants have been deceptively advertising to consumers that, in exchange for large up-front payments, Defendants will negotiate with consumers' mortgage companies to make consumers' mortgage payments more affordable by lowering their interest rates and/or principal amounts.  However, in numerous instances, Defendants failed to provide any of the advertised services and instead simply kept millions of dollars paid by consumers without further recourse.

C.    There is good cause to believe that Defendants have engaged in and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); the Mortgage Assistance Relief Services ("MARS") Rule, 12 C.F.R. § 1015; the CCPA, Pub. L. No. 116-260, Title XIV § 1401(b)(2); the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310; and the CCFPL, Cal. Fin. Code § 90000 et seq. Plaintiffs, therefore, are likely to prevail on the merits of this action.  As demonstrated by the bank records, consumer declarations, consumer complaints, business records, and the additional documentation filed by Plaintiffs, Plaintiffs have established a likelihood of success in showing that Defendants have falsely, deceptively, and illegally marketed, advertised, and sold mortgage relief assistance services in violation

5

1   of the FTC Act, the MARS Rule, the CCPA, the TSR, and the CCFPL.

2        D.    There is good cause to believe that immediate and irreparable harm will

3   result from Defendants' ongoing violations of the FTC Act, the MARS Rule, the

4   CCPA, the TSR, and the CCFPL unless Defendants are restrained and enjoined by

5   order of the court.

6        E.    There is good cause to believe that immediate and irreparable damage to

7   the court's ability to grant effective final relief for consumers – including monetary

8   restitution, rescission, disgorgement, or refunds – will occur from the sale, transfer,

9   destruction, or other disposition or concealment by Defendants of their assets or

10   records, unless the court grants the requested preliminary injunction.

11        F.    Good cause exists for authorizing the Receiver to continue to perform his

12   duties over the Receivership Entities with the full powers of an equity receiver and

13   freezing Defendants' assets.

14        G.    Weighing the equities and considering Plaintiffs' likelihood of ultimate

15   success on the merits, a preliminary injunction with an asset freeze, the appointment

16   of a temporary receiver, and other equitable relief is in the public interest.

17        H.    The court has authority to issue this Order pursuant to Section 13(b) of

18   the FTC Act, 15 U.S.C. § 53(b); California Financial Code § 90012; Federal Rule of

19   Civil Procedure 65; and the All Writs Act, 28 U.S.C. § 1651.

20        I.    No security is required of any agency of the United States for issuance of

21   a preliminary injunction. Fed. R. Civ. P. 65(c).

22   **DEFINITIONS**

23   For the purpose of this Order, the following definitions shall apply:

24        A.    "**Asset**" means any legal or equitable interest in, right to, or claim to, any

25   property, wherever located and by whomever held.

26        B.    "**Corporate Defendant(s)**" means Defendants Green Equitable

27   Solutions, also doing business as Academy Home Services; South West Consulting

28   Enterprises, Inc., also doing business as Academy Home Service, Atlantic Pacific

Service Group, Golden Home Services of America Enterprises, and Home Matters USA; Apex Consulting & Associates Inc., also doing business as Golden Home Services America and Home Matters USA Consulting; and Infocom Entertainment Ltd, Inc., also doing business as Amstar Service Group, Atlantic Pacific Service, and Home Relief Service of America; along with each of their subsidiaries, fictitious business names, affiliates, successors, and assigns.

C.     "**Defendant(s)**" means the Corporate Defendants, Dominic Ahiga (a/k/a Michael Dominic Grinnell), and Roger Scott Dyer, individually, collectively, or in any combination.

D.     "**Document**" is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including e-mail and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of the term.

E.     "**Electronic Data Host**" means any person or entity in the business of storing, hosting, or otherwise maintaining electronically stored information. This includes, but is not limited to, any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

F.     "**Individual Defendant(s)**" means Roger Scott Dyer and Dominic Ahiga (a/k/a Michael Dominic Grinnell), individually, collectively, or in any combination.

G.      "**National Do Not Call Registry**" means the registry of telephone numbers maintained by the FTC, pursuant to Section 310.4(b)(1)(iii)(B) of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B), of persons who do not wish to receive Outbound Telephone Calls to induce the purchase of goods or services.

H.      "**Outbound Telephone Call**" means a telephone call initiated by a Telemarketer to induce the purchase of goods or services to solicit a charitable contribution.

I.      "**Receiver**" means the temporary receiver appointed in Section XII of this Order and any deputy receivers that shall be named by the temporary receiver.

J.      "**Receivership Entities**" means Corporate Defendants as well as any other entity that has conducted any business related to Defendants' alleged mortgage assistance relief services, including receipt of Assets derived from any activity that is the subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any Defendant.

K.      "**Telemarketer**" means any person who, in connection with Telemarketing, initiates or receives telephone calls to or from a customer or donor.

L.      "**Telemarketing**" means any plan, program, or campaign that is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more telephones.

## ORDER

## I.      PROHIBITED MISREPRESENTATIONS AND OMISSIONS

**IT IS THEREFORE ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any goods or services, are restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication, any material fact, including, but not limited to:

A.     That a consumer who purchases Defendants' services will receive a reduction in their mortgage interest rate, principal amount, or monthly mortgage payment;

B.     That a consumer who purchases Defendants' services should not communicate with their lender or any other financial institution in connection with their mortgage;

C.     That a consumer who purchases Defendants' services is not obligated to, or should not make, scheduled periodic payments or any other payments pursuant to the terms of the consumer's mortgage;

D.     That a consumer who purchases Defendants' services is protected from foreclosure and cannot be foreclosed on while paying for Defendants' services;

E.     That Defendants' services are subject to a "money-back" guarantee in which a consumer will receive all of their money back if Defendants are unsuccessful in accomplishing any represented mortgage loan modification services or result;

F.     That Defendants are part of or affiliated with, endorsed or approved by, or are otherwise associated with the United States government, a governmental homeowner assistance plan, or a Federal, State, or local government agency, unit, or department;

G.     That Defendants are associated with any government programs related to the COVID-19 pandemic; and

H.     Any other fact material to consumers concerning any good or service, such as: the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

II.     **PROHIBITED BUSINESS ACTIVITIES**

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby restrained and enjoined from:

A.      Requesting or receiving payment of any fee or other consideration for any mortgage assistance relief service before the consumer has executed a written agreement with the consumer's loan holder or servicer incorporating the offer of mortgage assistance relief that Defendant(s) obtained from the loan holder or servicer on the consumer's behalf.

B.      Failing to disclose the following information in all general commercial communications regarding mortgage assistance relief services:

1.      "[Name of Company] is not associated with the government, and our service is not approved by the government or your lender."

2.      "Even if you accept this offer and use our service, your lender may not agree to change your loan."

C.      Failing to disclose the following information in all consumer-specific commercial communications regarding mortgage assistance relief services:

1.      "[Name of Company] is not associated with the government, and our service is not approved by the government or your lender."

2.      "You may stop doing business with us at any time.  You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer].  If you reject the offer, you do not have to pay us.  If you accept the offer, you will have to pay us [insert amount or method for calculating the amount] for our services."

3.      "Even if you accept this offer and use our service, your lender may not agree to change your loan."

4.      "If you stop paying your mortgage, you could lose your home and damage your credit rating."

D.      Initiating, or causing others to initiate, an Outbound Telephone Call to a person whose telephone number is on the National Do Not Call Registry.

E.      Initiating, or causing others to initiate, an Outbound Telephone Call to a telephone number within a given area code where Defendants have not, either directly

or through another person, paid the required annual fee for access to the telephone numbers within that area code that are included on the National Do Not Call Registry.

## III.     PROHIBITION ON RELEASE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from:

A.     Selling, renting, leasing, transferring, or otherwise disclosing, the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order; and

B.     Benefitting from or using the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order, provided, however, that Defendants may disclose such identifying information to a law enforcement agency, to their attorneys as required for their defense, as required by any law, regulation, or court order, or in any filings, pleadings or discovery in this action in the manner required by the Federal Rules of Civil Procedure and any protective order in the case.

## IV.     ASSET FREEZE

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from:

A.     Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending,

withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any Assets that are:

    1.    Owned or controlled, directly or indirectly, by any Defendant;

    2.    Held, in part or in whole, for the benefit of any Defendant;

    3.    In the actual or constructive possession of any Defendant; or

    4.    Owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Defendant.

    B.    Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant or subject to access by any Defendant, except as necessary to comply with written requests from the Receiver acting pursuant to its authority under this Order;

    C.    Incurring charges or cash advances on any credit, debit, or ATM card issued in the name, individually or jointly, of any Corporate Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant or of which any Defendant is an officer, director, member, or manager.  This includes any corporate bankcard or corporate credit card account for which any Defendant is, or was on the date that this Order was signed, an authorized signor; or

    D.    Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Defendant.

    The Assets affected by this Section shall include: (1) all Assets of Defendants as of the time this Order is entered; and (2) Assets obtained by Defendants after this Order is entered if those Assets are derived from any activity that is the subject of the Complaint in this matter or that is prohibited by this Order.  This Section does not prohibit any transfers to the Receiver or repatriation of foreign Assets specifically required by this Order.

## V.    DUTIES OF ASSET HOLDERS AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial or brokerage institution, Electronic Data Host, credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party processor, payment gateway, insurance company, business entity, or person who receives actual notice of this Order (by service or otherwise) that:

(a) has held, controlled, or maintained custody, through an account or otherwise, of any Document on behalf of any Defendant or any Asset that has been owned or controlled, directly or indirectly, by any Defendant; held, in part or in whole, for the benefit of any Defendant; in the actual or constructive possession of any Defendant; or owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant;

(b) has held, controlled, or maintained custody, through an account or otherwise, of any Document or Asset associated with credits, debits, or charges made on behalf of any Defendant, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities; or

(c) has extended credit to any Defendant, including through a credit card account, shall:

A.    Hold, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such Document or Asset, as well as all Documents or other property related to such Assets, except by further order of the court, provided, however, that this provision does not prohibit an Individual Defendant from incurring charges on a personal credit card established

13

prior to entry of this Order, up to the pre-existing credit limit;

B.      Deny any person, except the Receiver, access to any safe deposit box, commercial mail box, or storage facility that is titled in the name of any Defendant, either individually or jointly, or otherwise subject to access by any Defendant;

C.      Provide Plaintiffs' counsel and the Receiver, within three (3) days of receiving a copy of this Order, a sworn statement setting forth, for each Asset or account covered by this Section:

        1.      The identification number of each such account or Asset;

        2.      The balance of each such account, or a description of the nature and value of each such Asset as of the close of business on the day on which this Order is served, and, if the account or other Asset has been closed or removed, the date closed or removed, the total funds removed to close the account, and the name of the person or entity to whom such account or other Asset was remitted; and

        3.      The identification of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access by any Defendant; and

D.      Upon the request of Plaintiffs' counsel or the Receiver, promptly provide Plaintiffs' counsel and the Receiver with copies of all records or other Documents pertaining to any account covered by this Section or Asset, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mail boxes, and storage facilities, provided, however, that this Section does not prohibit any transfers to the Receiver or repatriation of foreign Assets specifically required by this Order.

/ / /

## VI.   NON-INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by this Order, including, but not limited to:

A.   Sending any communication or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all Defendants' Assets have been fully repatriated pursuant to this Order; or

B.   Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Defendants' Assets have been fully repatriated pursuant to this Order.

## VII.   CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that Plaintiffs may obtain credit reports concerning any Defendant pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to Plaintiffs.

## VIII.   PRESERVATION OF RECORDS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby restrained and enjoined from:

A.   Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, Documents that relate to: (1) the business, business practices, Assets, or business or

15

personal finances of any Defendant; (2) the business practices or finances of entities directly or indirectly under the control of any Defendant; or (3) the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

B.    Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect Defendants' incomes, disbursements, transactions, and use of Defendants' Assets.

## IX.    REPORT OF NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby restrained and enjoined from creating, operating, or exercising any control over any business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing Plaintiffs' counsel and the Receiver with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## X.    TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that David P. Stapleton of Stapleton Group's appointment as temporary receiver of the Receivership Entities with full powers of an equity receiver is EXTENDED through the pendency of this action.  The Receiver's duties and authority as Receiver are stated in the court's September 14, 2022 Order. Dkt. 25.  The Receiver shall be solely the agent of the court in acting as Receiver under this Order.

/ / /

/ / /

## XI.   TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER

**IT IS FURTHER ORDERED** that Defendants and any other person, with possession, custody or control of property of, or records relating to, the Receivership Entities shall, upon notice of this Order by personal service or otherwise, fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets and Documents of the Receivership Entities and immediately transfer or deliver to the Receiver possession, custody, and control of, the following:

A.     All Assets held by or for the benefit of the Receivership Entities;

B.     All Documents or Assets associated with credits, debits, or charges made on behalf of any Receivership Entity, wherever situated, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities;

C.     All Documents of or pertaining to the Receivership Entities;

D.     All computers, electronic devices, mobile devices and machines used to conduct the business of the Receivership Entities;

E.     All Assets and Documents belonging to other persons or entities whose interests are under the direction, possession, custody, or control of the Receivership Entities; and

F.     All keys, codes, user names and passwords necessary to gain or to secure access to any Assets or Documents of or pertaining to the Receivership Entities, including access to their business premises, means of communication, accounts, computer systems (onsite and remote), Electronic Data Hosts, or other property.

In the event any person or entity fails to deliver or transfer any Asset or Document, or otherwise fails to comply with any provision of this Section, the Receiver may file an Affidavit of Non-Compliance regarding the failure and a motion seeking compliance or a contempt citation.

/ / /

## XII.   COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants; Receivership Entities; Defendants' or Receivership Entities' officers, agents, employees, and attorneys, all other persons in active concert or participation with any of them, and any other person with possession, custody, or control of property of or records relating to the Receivership entities who receive actual notice of this Order shall fully cooperate with and assist the Receiver.  This cooperation and assistance shall include, but is not limited to, providing information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any keys, codes, user names and passwords required to access any computers, electronic devices, mobile devices, machines (onsite or remotely), and any cloud account (including specific method to access account) or electronic file in any medium; advising all persons who owe money to any Receivership Entity that all debts should be paid directly to the Receiver; and transferring funds at the Receiver's direction and producing records related to the Assets and sales of the Receivership Entities.

## XIII.   NON-INTERFERENCE WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants, Receivership Entities, Defendants' or Receivership Entities' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person served with a copy of this Order, are hereby restrained and enjoined from directly or indirectly:

A.     Interfering with the Receiver's efforts to manage, or take custody, control, or possession of, the Assets or Documents subject to the receivership;

B.     Transacting any of the business of the Receivership Entities;

C.     Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the

Receivership Entities; or

D.      Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of the court.

## XIV.  STAY OF ACTIONS

**IT IS FURTHER ORDERED** that, except by leave of the court, during the pendency of the receivership ordered herein, Defendants, Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and their corporations, subsidiaries, divisions, or affiliates, and all investors, creditors, stockholders, lessors, customers and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Defendants, and all others acting for or on behalf of such persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of the court over the Assets or Documents of the Receivership Entities, including, but not limited to:

A.      Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 et seq., or of any similar insolvency proceeding on behalf of the Receivership Entities;

B.      Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Receivership Entities, including the issuance or employment of process against the Receivership Entities, except that such actions may be commenced if necessary to toll any applicable statute of limitations;

C.      Filing or enforcing any lien on any asset of the Receivership Entities, taking or attempting to take possession, custody, or control of any Asset of the Receivership Entities; or attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of the Receivership Entities, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise.

/ / /

This Order does not stay: (1) the commencement or continuation of a criminal action or proceeding; (2) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (3) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

## XV.  DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each affiliate, telemarketer, marketer, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, attorney, spouse, subsidiary, division, and representative of any Defendant, and shall, within ten (10) days from the date of entry of this Order, provide Plaintiffs and the Receiver with a sworn statement that this provision of the Order has been satisfied, which statement shall include the names, physical addresses, phone number, and email addresses of each such person or entity who received a copy of the Order.

Furthermore, Defendants shall not take any action that would encourage officers, agents, members, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns or other persons or entities in active concert or participation with them to disregard this Order or believe that they are not bound by its provisions.

## XVI.   COMPLIANCE WITH THE COURT'S SEPTEMBER 14, 2022 ORDER

**IT IS FURTHER ORDERED** that Defendants shall comply immediately with all provisions of the court's September 14, 2022 Order (Dkt. 25), with which they have not yet complied, including but not limited to the provisions regarding financial asset disclosure, foreign asset repatriation, turnover of business records, provision of information to the Receiver, full cooperation with the Receiver, and responding to discovery.

/ / /

**XVII. SERVICE OF THIS ORDER**

**IT IS FURTHER ORDERED** that Plaintiffs shall serve a copy of this Order on Defendants, within seven (7) days of this Order.  Copies of this Order may be served by any means, including facsimile transmission, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiffs, by any law enforcement agency, or by private process server, upon any Defendant or any person (including any financial institution) that may have possession, custody or control of any Asset or Document of any Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure.  For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity.

**XIV. DURATION OF THE ORDER**

**IT IS FURTHER ORDERED** that this Order shall remain binding on parties and nonparties throughout the pendency of this action, and until the court issues a final ruling on the allegations of the Complaint.


IT IS SO ORDERED.


Dated: September 29, 2022

FERNANDO L. AENLLE-ROCHA
United States District Judge

21