ANISHA DASGUPTA, General Counsel
MILES D. FREEMAN, Cal. Bar No. 299302
mfreeman@ftc.gov
KARINA A. LAYUGAN, Cal. Bar No. 302049
klayugan@ftc.gov
CARLA L. CHEUNG, Cal. Bar No. 291562
ccheung1@ftc.gov
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Tel: (310) 824-4300
Fax: (310) 824-4380

*Attorneys for Plaintiff Federal Trade Commission*

TAYLOR STEINBACHER, Cal. Bar No. 285335
Taylor.Steinbacher@dfpi.ca.gov
LOUIS LAVERONE, Cal. Bar No. 296990
Louis.Laverone@dfpi.ca.gov
California Department of Financial Protection and Innovation
320 West 4th Street, Suite 750
Los Angeles, CA 90013
Tel: (213) 576-7500
Fax: (213) 576-7181

*Attorneys for Plaintiff California Department*
*of Financial Protection and Innovation*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION; and CALIFORNIA DEPARTMENT OF FINANCIAL PROTECTION and INNOVATION,<br><br>　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>GREEN EQUITABLE SOLUTIONS, a corporation, also d/b/a ACADEMY HOME SERVICES and WESTWOOD ADVOCATES; | Case No. 2:22-cv-06499-FLA (MARx)<br><br>**FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION, MONETARY RELIEF, AND OTHER RELIEF** |

SOUTH WEST CONSULTING
ENTERPRISES, INC., a corporation,
also d/b/a ACADEMY HOME
SERVICE, ATLANTIC PACIFIC
SERVICE GROUP, GOLDEN
HOMES SERVICES OF AMERICA
ENTERPRISES, and HOME
MATTERS USA;

APEX CONSULTING &
ASSOCIATES INC., a corporation,
also d/b/a GOLDEN HOME
SERVICES AMERICA and HOME
MATTERS USA CONSULTING;

INFOCOM ENTERTAINMENT
LTD, INC., a corporation, also d/b/a
AMSTAR SERVICE GROUP,
ATLANTIC PACIFIC SERVICE, and
HOME RELIEF SERVICE OF
AMERICA;

EQUITY RELIEF FUNDING, INC., a
corporation, also d/b/a ACADEMY
HOME SERVICES AMERICA,
ATLANTIC PACIFIC SERVICE
UNITED, GOLDEN HOME
SERVICES UNITED, and HOME
MATTERS USA GROUP;

ADVENT CONSULTING, INC., a
corporation;

DOMINIC AHIGA, a/k/a MICHAEL
DOMINIC GRINNELL, individually
and as an officer of Green Equitable
Solutions, South West Consulting
Enterprises, Inc., and Apex Consulting
& Associates Inc.;

ROGER SCOTT DYER, individually
and as an officer of South West
Consulting Enterprises, Inc.,
Infocom Entertainment Ltd, Inc., and
Equity Relief Funding, Inc.;

ARMANDO SOLIS BARRON,
individually; and

MICHAEL ROBIN NABATI,
individually,

                    Defendants, and

MOSTCAP ENTERPRISES CORP, a
corporation,

                    Relief Defendant.

Plaintiffs, the Federal Trade Commission ("FTC") and the California Department of Financial Protection and Innovation ("DFPI"), for their Complaint allege:

1.     Plaintiff FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), 57b; the 2009 Omnibus Appropriations Act, Public Law 111-8, Section 626, 123 Stat. 524, 678 (Mar. 11, 2009) ("Omnibus Act"), as clarified by the Credit Card Accountability Responsibility and Disclosure Act of 2009, Public Law 111-24, Section 511, 123 Stat. 1734, 1763-64 (May 22, 2009) ("Credit Card Act"), and amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law 111-203, Section 1097, 124 Stat. 1376, 2102-03 (July 21, 2010) ("Dodd-Frank Act"), 12 U.S.C. § 5538; the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6101 *et seq.*; and the COVID-19 Consumer Protection Act ("CCPA"), Public Law No. 116-260, 134 Stat. 1182, Title XIV, § 1401, which authorize the FTC to seek, and the Court to order temporary, preliminary, and permanent injunctive relief, monetary relief, and other equitable relief, including a temporary and preliminary injunction, an asset freeze, and the appointment of a receiver, for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), in violation of the Mortgage Assistance Relief Services Rule ("MARS Rule" (Regulation O)), 12 C.F.R. Part 1015, the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, and the CCPA, Pub. L. No. 116-260, Title XIV, § 1401(b)(2).

2.     Plaintiff DFPI brings this action under the California Consumer Financial Protection Law ("CCFPL") (Cal. Fin. Code § 90000 *et seq.*), which, as of the law's January 1, 2021, effective date, regulates persons engaged in offering or providing a consumer financial product or service in California and their affiliated

- 1 -

1   service providers.  The CCFPL authorizes the DFPI to seek relief which may

2   include, but is not limited to, recission of contracts, refund of moneys, restitution,

3   disgorgement, payment of damages or other monetary relief, limits on the activities

4   or functions of the person, and monetary penalties.[1]

5        3.    Defendants' violations are in connection with the marketing and sale

6   of mortgage assistance relief services.  Since at least June 2018, Defendants have

7   been deceptively advertising to consumers that, in exchange for large up-front

8   payments, Defendants will negotiate with consumers' mortgage companies to

9   make consumers' mortgage payments more affordable by lowering their interest

10  rates and/or principal amounts.  However, in numerous instances, Defendants

11  failed to provide any of the advertised services and instead simply pocketed

12  millions of dollars paid by consumers.  In numerous instances, Defendants' actions

13  have caused consumers to lose the payments Defendants pocketed and incur

14  substantial interest charges and other penalties from paying Defendants instead of

15  their mortgage companies.  In some instances, consumers have been notified by

16  their mortgage companies that they have started, or intend to start, foreclosure

17  proceedings because the consumers followed Defendants' instructions to cease

18  making payments on their mortgages.  Accordingly, Plaintiff FTC brings this

19  action against Defendants for their violations of the FTC Act, the MARS Rule

20  (Regulation O), the TSR, and the CCPA, and Plaintiff DFPI brings this action

21  against Defendants for their violations of the CCFPL.

22                    **JURISDICTION AND VENUE**

23        4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§

24  1331, 1337(a), 1345, and 1355; 15 U.S.C. §§ 6102(c) and 6105(b); and Section

25  _____

26

27  [1] In light of the CCFPL's January 1, 2021, effective date, the DFPI asserts no
    claims in this action for conduct occurring before that date.

28

1  626 of the Omnibus Act, as clarified by Section 511 of the Credit Card Act and

2  amended by Section 1097 of the Dodd-Frank Act, 12 U.S.C. § 5538.  This Court

3  has supplemental jurisdiction over the subject matter of the California state law

4  claims pursuant to 28 U.S.C. § 1367.

5       5.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1), (b)(2),

6  (c)(1), and (d), and 15 U.S.C. § 53(b).

7                              **PLAINTIFFS**

8       6.     Plaintiff FTC is an independent agency of the United States

9  Government created by the FTC Act, which authorizes the FTC to commence this

10  district court civil action by its own attorneys.  15 U.S.C. §§ 41–58.  The FTC

11  enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or

12  deceptive acts or practices in or affecting commerce.  Also, pursuant to 12 U.S.C. §

13  5538, the FTC enforces the MARS Rule (Regulation O), which requires mortgage

14  assistance relief services providers to make certain disclosures, prohibits certain

15  representations, and generally prohibits the collection of an advance fee.  The FTC

16  further enforces the Telemarketing Act, 15 U.S.C. § 6101 *et seq*.  Pursuant to the

17  Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part

18  310, which prohibits deceptive and abusive telemarketing acts or practices.  In

19  addition, the FTC enforces the CCPA, which makes it unlawful under Section 5 of

20  the FTC Act for any person or corporation to engage in a deceptive act or practice

21  in or affecting commerce associated with a government benefit related to COVID-

22  19 for the duration of the COVID-19 public health emergency.

23       7.     Plaintiff DFPI is a California state agency, formerly known as the

24  Department of Business Oversight, and is the state's consumer financial protection

25  regulator.  The Commissioner of the Department of Financial Protection and

26  Innovation is the head of the DFPI, which has jurisdiction over the regulation of

27  persons engaged in offering or providing a consumer financial product or service

28

in California and affiliated service providers under the CCFPL.  Cal. Fin. Code § 90005(f).  Specifically, the CCFPL makes it unlawful for a covered person to, among other things, engage, have engaged, or propose to engage in any unlawful, unfair, deceptive, or abusive act or practice with respect to consumer financial products or services.  Cal. Fin. Code § 90003(a).  The CCFPL expressly authorizes the DFPI to bring civil actions and to prosecute those actions in federal court.  Cal. Fin. Code § 90006(b)(1).

## DEFENDANTS

8.      Corporate Defendant Green Equitable Solutions, also doing business as Academy Home Services, is a California corporation that was formed in July 2021 and dissolved in July 2022.  Its principal place of business was at 27201 Puerta Real, Suite 300, Mission Viejo, California 92691.  Green Equitable Solutions has transacted business in this District and throughout the United States. At times relevant to this Complaint, acting alone, in concert with others, or as part of the common enterprise described in Paragraphs 27 through 29, Green Equitable Solutions has advertised, marketed, provided, offered to provide, or arranged for others to provide mortgage assistance relief services, as defined in 12 C.F.R. § 1015.2.

9.      Corporate Defendant South West Consulting Enterprises, Inc. ("South West Consulting"), also doing business as Academy Home Service, Atlantic Pacific Service Group, Golden Homes Services of America Enterprises, and Home Matters USA, is a California corporation that was formed in December 2019 and dissolved in February 2022.  Its principal place of business was at 941 South Vermont Avenue, Suite 101#63, Los Angeles, California 90006.  South West Consulting has transacted business in this District and throughout the United States.  At times relevant to this Complaint, acting alone, in concert with others, or as part of the common enterprise described in Paragraphs 27 through 29, South

West Consulting has advertised, marketed, provided, offered to provide, or arranged for others to provide mortgage assistance relief services, as defined in 12 C.F.R. § 1015.2.

10.     Corporate Defendant Apex Consulting & Associates Inc. ("Apex Consulting"), also doing business as Golden Home Services America and Home Matters USA Consulting, is a California corporation that was formed in December 2020 and dissolved in September 2021.  Its principal place of business was at 3435 Wilshire Boulevard, Suite 2700-92, Los Angeles, California 90010.  Apex Consulting has transacted business in this District and throughout the United States.  At times relevant to this Complaint, acting alone, in concert with others, or as part of the common enterprise described in Paragraphs 27 through 29, Apex Consulting has advertised, marketed, provided, offered to provide, or arranged for others to provide mortgage assistance relief services, as defined in 12 C.F.R. § 1015.2.

11.     Corporate Defendant Infocom Entertainment Ltd, Inc. ("Infocom Entertainment"), also doing business as Amstar Service Group, Atlantic Pacific Service, and Home Relief Service of America, is a California corporation that was formed in June 2018 and dissolved in February 2020.  Its principal place of business was at 966 South San Pedro Street, Suite 36, Los Angeles, California 90015.  Infocom Entertainment has transacted business in this District and throughout the United States.  At times relevant to this Complaint, acting alone, in concert with others, or as part of the common enterprise described in Paragraphs 27 through 29, Infocom Entertainment has advertised, marketed, provided, offered to provide, or arranged for others to provide mortgage assistance relief services, as defined in 12 C.F.R. § 1015.2.

12.     Corporate Defendant Equity Relief Funding, Inc. ("Equity Relief Funding"), also doing business as Academy Home Services America, Atlantic

Pacific Service United, Golden Home Services United, and Home Matters USA Group, is a California corporation formed on October 27, 2021. Its principal place of business is at 8484 Wilshire Boulevard, Suite 515, Beverly Hills, California 90211. Equity Relief Funding has transacted business in this District and throughout the United States. At times relevant to this Complaint, acting alone, in concert with others, or as part of the common enterprise described in Paragraphs 27 through 29, Equity Relief Funding has advertised, marketed, provided, offered to provide, or arranged for others to provide mortgage assistance relief services, as defined in 12 C.F.R. § 1015.2.

13. Corporate Defendant Advent Consulting, Inc. ("Advent Consulting") is a California corporation formed on February 9, 2022. Its principal place of business is at 10586 West Pico Boulevard, Number 321, Los Angeles, California 90064. Advent Consulting has transacted business in this District and throughout the United States. At times relevant to this Complaint, acting alone, in concert with others, or as part of the common enterprise described in Paragraphs 27 through 29, Advent Consulting has advertised, marketed, provided, offered to provide, or arranged for others to provide mortgage assistance relief services, as defined in 12 C.F.R. § 1015.2.

14. Individual Defendant Dominic Ahiga, also known as Michael Dominic Grinnell, ("Ahiga") has served as an officer or director of several of the Corporate Defendants at times relevant to this Complaint, including: Green Equitable Solutions' Chief Executive Officer, Secretary, Chief Financial Officer, and Director; South West Consulting's Secretary; and Apex Consulting's Chief Executive Officer, Secretary, Chief Financial Officer, and Director. Ahiga has been personally involved in setting up and operating the Corporate Defendants, including: incorporating Green Equitable Solutions and Apex Consulting; registering Golden Home Services America and Home Matters USA Consulting as

Apex Consulting's fictitious business names; serving as an authorized signatory on two of Corporate Defendants' bank accounts and signing withdrawal slips to withdraw cash from Defendants' bank accounts; personally cashing checks paid by consumers to Corporate Defendants; and registering and paying for some of Corporate Defendants' websites with his personal credit cards. At times relevant to this Complaint, acting alone or in concert with others, and through interrelated entities described in Paragraphs 8 through 13, Ahiga has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. At times relevant to this Complaint, Ahiga resides and has resided in this District. In connection with the matters alleged herein, Ahiga transacts or has transacted business in this District and throughout the United States.

15.     Individual Defendant Roger Scott Dyer ("Dyer") has served as an officer and director of South West Consulting (as Chief Executive Officer, Secretary, Chief Financial Officer, and Director) and Infocom Entertainment (as Chief Executive Officer, Secretary, Chief Financial Officer, and Director) at times relevant to this Complaint. Dyer has served and continues to serve as an officer and director of Equity Relief Funding (as Chief Executive Officer, Secretary, Chief Financial Officer, and Director) at times relevant to this Complaint. Dyer was personally involved in setting up and operating the Corporate Defendants, including: incorporating South West Consulting, Infocom Entertainment, and Equity Relief Funding; registering Academy Home Service, Atlantic Pacific Service Group, Golden Homes Services of America Enterprises, and Home Matters USA as South West Consulting's fictitious business names; registering Academy Home Services America, Atlantic Pacific Service United, Golden Home Services United, and Home Matters USA Group as Equity Relief Funding's fictitious business names; serving as an authorized signatory on nearly all of

1  Defendants' bank accounts and signing withdrawal slips to withdraw cash from
2  Defendants' bank accounts; personally cashing checks paid by consumers to the
3  Corporate Defendants; registering and paying for some of Corporate Defendants'
4  websites with his personal credit cards; and serving as the contact person for some
5  of Corporate Defendants' locations and paying for some the location rental fees
6  with his personal credit cards. At times relevant to this Complaint, acting alone or
7  in concert with others, and through interrelated entities described in Paragraphs 8
8  through 13, Dyer has formulated, directed, controlled, had the authority to control,
9  or participated in the acts and practices set forth in this Complaint. At times
10 relevant to this Complaint, Dyer resides and has resided in this District. In
11 connection with the matters alleged herein, Dyer transacts or has transacted
12 business in this District and throughout the United States.

13        16.    Individual Defendant Armando Solis Barron ("Solis Barron") has
14 participated and continues to participate directly in Defendants' unlawful acts or
15 practices alleged herein. Solis Barron had authority to control and continues to
16 have authority to control the Corporate Defendants. Solis Barron has trained and
17 managed and continues to train and manage the staff of the Corporate Defendants
18 in connection with the unlawful acts or practices alleged herein. For example,
19 Solis Barron has instructed and continues to instruct staff of the Corporate
20 Defendants on the content and frequency of staff's communications with
21 consumers and staff's communications with consumers' mortgage companies.
22 Solis Barron has disciplined and continues to discipline staff when they do not
23 adhere to his instructions. At times relevant to this Complaint, acting alone or in
24 concert with others, and through interrelated entities described in Paragraphs 8
25 through 13, Solis Barron has formulated, directed, controlled, had the authority to
26 control, or participated in the acts and practices set forth in this Complaint. At
27 times relevant to this Complaint, Solis Barron resides and has resided in this

28

District.  In connection with the matters alleged herein, Solis Barron transacts or has transacted business in this District and throughout the United States.

17.     Individual Defendant Michael Robin Nabati ("Nabati") has participated and continues to participate directly in Defendants' unlawful acts or practices alleged herein.  Nabati had authority to control and continues to have authority to control the Corporate Defendants.  Nabati has hired, trained, and managed and continues to hire, train, and manage the staff of the Corporate Defendants in connection with the unlawful acts or practices alleged herein.  For example, Nabati has recruited, interviewed, and hired staff and continues to recruit, interview, and hire staff on behalf of the Corporate Defendants.  Nabati has instructed and continues to instruct staff of the Corporate Defendants on the content and frequency of staff's communications with consumers and staff's communications with consumers' mortgage companies.  Nabati has disciplined and continues to discipline staff when they do not adhere to his instructions.  Nabati also has communicated and continues to communicate directly with consumers in connection with the unlawful acts or practices alleged herein.  At times relevant to this Complaint, acting alone or in concert with others, and through interrelated entities described in Paragraphs 8 through 13, Nabati has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  At times relevant to this Complaint, Nabati resides and has resided in this District.  In connection with the matters alleged herein, Nabati transacts or has transacted business in this District and throughout the United States.

18.     Relief Defendant MostCap Enterprises Corp ("MostCap Enterprises") is a California corporation formed on August 9, 2019.  Its principal place of business is at 3435 Wilshire Boulevard, Suite 2700-101, Los Angeles, California 90010.  MostCap Enterprises is a corporation that has received funds that can be

traced directly to Defendants' unlawful acts or practices alleged below, and that has no legitimate claim to those funds.  MostCap Enterprises transacts and has transacted business in this District.

**PRIOR ENFORCEMENT ACTIONS AGAINST DEFENDANTS FOR THEIR UNLAWFUL MORTGAGE LOAN MODIFICATION SCHEMES**

19.     Defendants' mortgage loan modification schemes have been the subject of prior law enforcement actions by the States of Ohio, Washington, Oregon, Connecticut, North Carolina, and California.  Each of these actions has resulted in a judgment or administrative order being entered against one or more of the Defendants, and the Defendants have been ordered to pay restitution to injured consumers and pay civil penalties and costs to state regulators.  Defendants have ignored each of these adverse rulings and continued their deceptive and illegal mortgage assistance relief services schemes.  Plaintiffs describe each of these prior law enforcement proceedings below.

20.     Prior to the formation of the Corporate Defendants, Ahiga operated a similar mortgage loan modification scheme through two companies, Equitable Century Group, LLC and 1st Financial Associates, LLC.  In November 2017, the State of Ohio filed a civil complaint against Ahiga and these two companies, alleging that they engaged in an unlawful mortgage loan modification scheme. *State of Ohio v. Equitable Century Group, LLC, et al.*, Franklin Cnty. Case No. 17-CV-009813 (filed Nov. 2, 2017).[2]  After the defendants failed to respond, the court granted the State of Ohio's motion for default judgment and entered final judgment against them in April 2018.  To date, neither Ahiga nor his companies have paid

---

[2] *Available at* https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2017-11-02-COMPLAINT-Equitable-Century-Group-TriWe.aspx (last visited July 12, 2022).

the restitution, civil penalties, and costs required by the court's final judgment. Ahiga also continues to engage in the mortgage loan modification services industry in violation of the court's final judgment.

21.     On April 3, 2020, the State of Washington, Department of Financial Institutions, Division of Consumer Services issued a statement of charges alleging that Defendants Infocom Entertainment, Ahiga, and Dyer, and "Amstar Services a/k/a Financial Investment Services Corporation d/b/a Home Relief Services" engaged in an unlawful mortgage loan modification scheme. *In the Matter of Determining Whether There Has Been a Violation of the Mortgage Broker Practices Act of Washington by Amstar Services, et al.*, Wash. Dept. of Fin. Instits., Div. of Consumer Servs. Case No. C-19-2716-20 (issued Apr. 3, 2020).  On June 3, 2020, the Department issued its final order against the respondents.[3]  To date, the respondents have not paid the restitution, fines, and fees required by the order. Respondents also continue to advertise and operate their purported mortgage loan modification services in violation of the order.

22.     On May 11, 2020, the State of Oregon, Department of Consumer and Business Services, Division of Financial Regulation issued an administrative order to cease and desist and a proposed order assessing civil penalties against Defendant Ahiga, "Amstar Service aka Amstar Services," and Amstar Service employee Alex Newman[4] alleging that respondents engaged in an unlawful mortgage loan modification scheme. *In the Matter of Amstar Service aka Amstar Services, Michael Grinnell, Alex Newman*, Ore. Dept. of Consumer and Business Aff., Div.

---

[3] *Available at* https://dfi.wa.gov/sites/default/files/consumer-services/enforcement-actions/C-19-2716-20-FO01.pdf (last visited July 12, 2022).

[4] Based on the administrative order, Alex Newman was employed by or associated with Amstar Services as a Client Representative and was at least one consumer's primary contact at Amstar Services.

of Fin. Regul. Case No. DM-19-0126 (issued May 11, 2020).  On June 25, 2020, the Department issued its final order to cease and desist and to pay civil penalties against the respondents.[5]  To date, the respondents have not paid the restitution and civil penalties required by the order.  Respondents also continue to advertise and operate their purported mortgage loan modification services in violation of the order.

23.     On May 25, 2021, the State of Connecticut's Banking Commissioner issued an administrative order against Defendants Infocom Entertainment and Dyer.  The order alleged that respondents engaged in an unlawful mortgage loan modification scheme.  The order required respondents to pay restitution and gave notice to respondents of the Banking Commissioner's intent to issue a cease and desist order and impose civil penalties, and of respondents' right to a hearing.  *In the Matter of Infocom Entertainment Ltd, Inc. d/b/a Atlantic Pacific Service, et al*, Conn. Banking Comm'r (issued May 25, 2021).[6]  Respondents did not timely request a hearing and, as such, respondents were required to cease and desist, and pay restitution and civil penalties.  To date, the respondents have not paid the restitution and civil penalties required by the order.  Respondents also continue to advertise and operate their purported mortgage loan modification services in violation of the order.

24.     On June 25, 2021, the State of North Carolina filed a complaint, motion for temporary restraining order, and motion for preliminary injunction

_____

[5] *Available at* https://dfr.oregon.gov/AdminOrders/enf-orders-2020/Amstar%20Service%20SSig%20Final%20Order.pdf (last visited July 12, 2022).
[6] *Available at* https://portal.ct.gov/-/media/DOB/Enforcement/Consumer-Credit/2021-CC-Orders/Infocom-Entertainment-Dyer-Rest-NOI-CD-CP.pdf (last visited July 12, 2022).

against Defendant Ahiga, "Amstar Services," and "Home Relief Services," alleging that they engaged in an unlawful mortgage loan modification and foreclosure assistance scheme. *State of North Carolina v. Grinnell, et al.*, Wake Cnty. Case No. 21-CV-000775 (filed Jun. 25, 2021).[7]  On May 17, 2022, North Carolina obtained a default judgment directing defendants to pay restitution and civil penalties and enjoining defendants from offering mortgage relief services in the state.  To date, the defendants have not paid the restitution and costs ordered by the court.  Defendants also continue to advertise and operate their purported mortgage loan modification services in violation of the order.

25.     On November 5, 2021, following an investigation into the unauthorized practice of law, the State Bar of California issued a cease and desist letter to Defendant South West Consulting's fictitious business name, "Home Matters USA."[8]  The cease and desist letter provided Home Matters USA with notice that its actions may violate California state statutes and constitute the unauthorized practice of law.  Home Matters USA has continued the advertising and operations described in the cease and desist letter.

26.     Despite these prior enforcement actions, Defendants continue to unlawfully advertise, market, provide, offer to provide, or arrange for others to provide mortgage assistance relief services, as defined in 12 C.F.R. § 1015.2.

## COMMON ENTERPRISE

27.     Defendants Green Equitable Solutions, also doing business as Academy Home Services, South West Consulting Enterprises, Inc., also doing

_____

[7] *Available at* https://ncdoj.gov/wp-content/uploads/2021/06/Complaint-filed-06.25.2021-1.pdf (last visited July 12, 2022).

[8] *Available at* https://www.calbar.ca.gov/Public/Discipline/Nonattorney-Actions/tag/los-angeles-county/acat/2/pager/896119/page/4 (last visited July 12, 2022).

business as Academy Home Service, Atlantic Pacific Service Group, Golden Homes Services of America Enterprises, and Home Matters USA, Apex Consulting & Associates Inc., also doing business as Golden Home Services America and Home Matters USA Consulting, Infocom Entertainment Ltd., Inc., also doing business as Amstar Service Group, Atlantic Pacific Service, and Home Relief Service of America, Equity Relief Funding, Inc., also doing business as Academy Home Services America, Atlantic Pacific Service United, Golden Home Services United, and Home Matters USA Group, and Defendant Advent Consulting, Inc. ("Corporate Defendants") have operated and continue to operate as a common enterprise while engaging in the unlawful and deceptive acts and practices and other violations of law alleged below.  Despite having submitted dissolution paperwork with the California Secretary of State, Green Equitable Solutions, South West Consulting, Apex Consulting, and Infocom Entertainment continue to operate as a common enterprise, engaging in the unlawful and deceptive acts and practices and other violations of law alleged below.  For example, these purportedly dissolved entities continue to register new fictitious business names, open and close bank accounts, contact consumers regarding mortgage assistance relief services, and receive consumer payments.

28.     Corporate Defendants have conducted and continue to conduct the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, employees, and office locations, and that have comingled funds.  Corporate Defendants have used and continue to use almost identical advertising, marketing, and other communications directed at consumers and have blurred corporate distinctions when interacting with consumers.

29.     Because the Corporate Defendants have operated and continue to operate as a common enterprise, each of them is liable for the acts and practices

alleged below.  Defendants Ahiga and Dyer ("Individual Defendants") have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.  Individual Defendants have provided substantial assistance with respect to the acts and practices of the Corporate Defendants that constitute the common enterprise.

## COMMERCE

30.     At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES
### Overview

31.     From at least June of 2018 to present, Defendants, individually and through the operation of the common enterprise, have engaged and continue to engage in a course of conduct to advertise, market, sell, provide, offer to provide, or arrange for others to provide mortgage assistance relief services, including mortgage loan modification services.

32.     Defendants market their services in a variety of ways, including over the phone and online through their websites.

33.     Defendants prey on financially distressed homeowners by luring them to sign up for mortgage assistance relief services with promises that, in approximately three months, Defendants will negotiate a modification to the terms of their mortgage loan that will substantially reduce their monthly mortgage payments and the total amount they will be required to pay their mortgage lender. In numerous instances, Defendants and their representatives have told and continue to tell consumers expressly or by implication that Defendants are associated with

government mortgage relief programs, including federal COVID-19 relief programs.

34.    Defendants charge consumers up-front fees for their services in the form of monthly payments.  The payments Defendants collect from consumers range from $500 to $2,900 per month.  Defendants charge consumers fees before obtaining any modification or settlement offers from lenders.

35.    In numerous instances, Defendants have instructed and continue to instruct consumers who have purchased Defendants' services not to make payments to their mortgage lender.  Defendants tell consumers not to communicate with their mortgage lenders and insist that Defendants will handle all communications with their lenders going forward.

36.    Despite promises that Defendants would negotiate home loan modifications in approximately three months, Defendants have not done so. Instead, Defendants string consumers along by telling the consumer that they need more time or more documents from the homeowner to secure the home loan modification.

37.    In fact, in numerous instances, Defendants have failed to obtain any relief at all for their customers.  Many consumers have incurred substantial interest charges and other penalties from making payments to Defendants instead of their mortgage lenders.  As a consequence, many consumer's credit ratings have been negatively affected, and some consumers have had their homes put in foreclosure.

### The Sales Pitch

38.    Defendants initiate contact with consumers in many ways. Defendants make unsolicited outbound telemarketing calls, including calls to telephone numbers registered with the National Do Not Call Registry at the time the calls are made.  Defendants also send unsolicited text messages to consumers advertising their services.  Defendants advertise via websites and social media

posts where they direct consumers to call or email to sign-up for Defendants' services as well.

39.     Defendants tell consumers that they can work with the consumer's mortgage lender to modify the terms of the consumer's home loan by substantially lowering the interest rate and/or the outstanding principal balance, thereby substantially reducing both the monthly payment amount and the total amount the consumer will be required to pay over the life of the mortgage.

40.     Defendants represent that they are experts who know how to negotiate and obtain home loan modifications to make homeowners' mortgage payments more affordable.  For example, one of Defendants' websites, at times relevant to this Complaint, stated, "Experience and Relationships:  Having the knowledge and business acumen to create concise documentation that will get approved is where are [*sic*] Professional expertise saves you MONEY."  Golden Home Services America Home Page, www.GoldenHomeServicesAmerica.com, last visited November 11, 2021.

41.     In numerous instances, Defendants have told and continue to tell consumers expressly or by implication that Defendants are associated or affiliated with government mortgage relief programs.  For instance, in numerous instances, Defendants have told and continue to tell consumers that they are eligible for federal homeowner assistance programs, including benefit programs related to COVID-19 relief, and that, if the consumers sign up for Defendants' services, Defendants will enroll them in such programs.  As an example, one of Defendants' websites contains a video of a cartoon avatar that states, "My name is Lawrence Smith.  I was way back on my mortgage payments due to this pandemic. . . .  [I was] in a severe depression, in crisis.  Then I found Academy Home Services. They were working with COVID Care forgiveness plans 'slash' government-backed hardship program.  [*sic*]  . . .  They didn't only help me to get the best

interest rate with lower mortgage payments, which are way too affordable, my past dues were forgiven . . ."  Academy Home Service Home Page, www.AcademyHomeService.com, last visited July 12, 2022.

42.    In numerous instances, Defendants have told and continue to tell consumers that Defendants can guarantee a loan modification resulting in substantially lower monthly and overall mortgage payments in approximately three months.  For example, Defendants tell consumers that Defendants offer a money-back guarantee and only do so because Defendants will be able to modify the consumer's mortgage.  As another example, Defendants tell consumers that the loan modifications Defendants offer are guaranteed because they are associated with government mortgage relief programs, including programs related to COVID-19 relief.  In reality, however, Defendants are not associated with, approved by, or affiliated with such programs.

43.    In numerous instances, Defendants' general commercial communications, such as their websites, have not clearly and prominently contained and do not clearly and prominently contain the following required disclosures as required by the MARS Rule, 12 C.F.R. § 1015.4(a)(1)-(2):

(a)   "[Name of Defendant] is not associated with the government, and our service is not approved by the government or your lender;" and

(b)   "Even if you accept this offer and use our service, your lender may not agree to change your loan."

For example, Defendants' websites www.AcademyHomeService.com, www.GoldenHomeServicesAmerica.com, and www.HomeMattersUSA.com have not included these disclosures.

44.    Defendants tell consumers that, to obtain Defendants' services, consumers will have to submit monthly up-front payments to Defendants.  In

- 18 -

1   numerous instances, Defendants have told and continue to tell consumers that the
2   first payment is a deposit required to lock-in the consumer's lower interest rate.

3       45.    In numerous instances, Defendants have told and continue to tell
4   consumers that for Defendants' loan modification services to be successful, the
5   consumer must stop making their monthly payments to their mortgage lender and
6   must stop communicating with their mortgage lender.

7                          **Post-Sales Pitch Communications**

8       46.    In numerous instances, after the initial sales pitch, Defendants have
9   emailed and continue to email consumers additional information to bolster their
10  claims about the savings consumers can expect to receive if the consumer signs up
11  for Defendants' loan modification services.  Below is an example of the
12  information Defendants email to consumers shortly after the initial sales pitch:

13

14          OCWEN LOAN WAS AT:              $ 2,704.00
            WE HAD THEM APPROVED AT:        $ 2,158.00
15          **MONTHLY SAVINGS OF:**         **$ 546.00**

16
            PENNY MAC LOAN WAS AT:          $ 1,302.70
17          WE HAD THEM APPROVED AT:        $ 838.35
            **MONTHLY SAVINGS OF:**         **$ 464.35**

18          These are just samples of the HUNDREDS of Homeowners which  we have
19          HELPED To SAVE MONEY.

20          **We Beat the SYSTEM, we do not get BEAT by the System.**

21

22      47.    To sign up for Defendants' services, in numerous instances,
23  consumers are required to sign a document titled "OFFER," which contains a
24  prepopulated, lower modified loan and interest payment.  The OFFER document
25  leads many consumers to believe that these are new payment terms on their loans
26  and all they have to do is to sign the document and make required up-front
27  payments to Defendants to accept the terms.  In numerous instances, Defendants'
28

                                    - 19 -

1   cover email that encloses the OFFER expressly tells consumers that, if they sign up

2   for Defendants' services, the consumer's mortgage loan cannot be collected on, the

3   consumer's home cannot be foreclosed upon, and the consumer's credit score

4   cannot be impacted.  An excerpt of such a cover email and OFFER a consumer

5   received is shown below.

6

7   **From:** "Jasmine Silva" <jasmine@goldenhomeservicesamerica.com>
    **To:** ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
    **Sent:** Wed, Sep 15, 2021 at 6:10 PM
    **Subject:** Loan Approval Documents
    Greetings,

8   Congratulations on your lowered HOME LOAN.
    I have attached the following documents to this email:

9   1) The formal proposal, settlement terms, and invoice.

    2) The prepaid Fed-Ex label. (just get FEDEX Envelope).

10  3) Payment Installment Plan.

    I have enclosed the NEW OFFER for your loan.

11  Please fill out and sign the documents within the proposal packet in blue or black ink and mail them, along with the retainer fee, using the provided label.

12  Immediately after receiving your documents, a Qualified Written Request will be filed on your behalf which will initiate a deferment of your loan and place it in a freeze for the duration of the restructure process, which TAKES 120 days.

    During said time, your loan cannot be collected on, you cannot be foreclosed upon, and your credit score cannot be impacted. This is under the Dual Tracking Law.

13  Please let me know when you place the documents in the mail so that I can notify the processing and legal team as to the activation of your file and prepare for the arbitration process.
    Thank You
    _____

14  Jasmine Silva | Customer Care Executive

15  Golden Home Services America

    3580 Wilshire Blvd Suite # 900-39

16  Los Angeles, CA 90010

17

18

19

20

21

22

23

24

25

26

27

28

## CONGRATULATIONS WE HAVE ACCEPTED TO REPRESENT YOUR CASE:

**Loan Number:**

**Property Address:**

**Dear Borrower(s):**

Congratulations, based on our review, it seems that you are a good candidate for our lender/servicer complaint program which may result in a favorable settlement outcome.

If you choose to accept our service offer we will initiate our service to file a federal regulatory complaint against your lender/servicer.

The enclosed service offer will outline the proposed settlement terms requested by your lender/servicer.

### To Accept This Service Offer:

➢ **Read, Review, Sign and Return** the Proposed Settlement Terms Form

➢ **Read, Review, Sign and Return** the Terms and Conditions Fee Agreement

➢ **Make the retainer fee agreement payment to get started!**

### ACCEPT THIS SERVICE OFFER BY: SEPTEMBER 15TH, 2021

If you do not complete and send the above/attached forms by the above date, you must contact us if you still wish to be considered for the lender/servicer complaint program.

**To better understand the proposed settlement terms, please review the attached immediately.**

Don't delay—take advantage of this great service offer by **Golden Home Services America:**

Sincerely,

**Derek Sullivan**
Client Representative

Attachments:
1) Proposed Settlement Terms,
2) Terms and Conditions Fee Agreement,
3) Invoice,
4) Money Back Guarantee FAX Coversheet.

Pg# 1

**Property Address:**

**City, State:**

**Zip:**

**Loan number:**

| CURRENT TERMS: | 1st Mortgage |
|---|---|
| Loan Type | ASSIGNED |
| Principal Balance: | |
| Terms: | ASSIGNED |
| Interest Rate (APR): | 4.8750000000% |
| Principal & Interest (P&I) | $1,185.58 |
| Escrow: | INCL |

| PROPOSED SETTLEMENT TERMS: | 1st Mortgage |
|---|---|
| Loan Type (FIXED RATE MORTGAGE) | ASSIGNED |
| Principal Balance: | |
| Terms: | REMAINING/ASSIG |
| Interest Rate (APR): | 1.73250000% |
| Principal & Interest (P&I) | $517.91 |
| Escrow: | $131.10 |
| Total Monthly Payment: | $649.01 |
| Monthly Savings: | $536.57 |
| Annual Savings: | $7,788.12 |
| Saving in First 5 Years: | $38,940.61 |

| Relinquished Amount: Arrears (ARREARS) | (ARREARS) |
|---|---|
| Principal Balance Reduction: *PARTIAL CLAIM | *PARTIAL CLAIM |

Pg# 2

48.     In numerous instances, Defendants have requested and continue to request that consumers sign a cease and desist letter demanding that the consumer's mortgage servicer cease all contact with the consumer, to contact the consumer only if Defendants give the mortgage servicer permission to do so, and to direct all communication regarding the consumer to Defendants.  Such cease and desist letters, when provided by Defendants to consumers' mortgage companies, further prolong Defendants' scheme by ensuring that consumers do not receive notices of missed or late payments from their mortgage companies.

49.     In numerous instances, Defendants have told and continue to tell consumers that they will not begin receiving Defendants' services until the consumer signs Defendants' contract and pays the up-front fee for Defendants' service.

### Post-Sign Up

50.     Defendants collect consumers' monthly payments through a variety of methods, including via Stripe, Zelle, bank wire transfers, and/or cashier's checks, personal checks, and money orders sent using prepaid FedEx envelopes provided by Defendants.

51.     Defendants request and receive payment of fees before consumers execute written agreements with the consumers' mortgage company or servicer that incorporate the offer of mortgage assistance relief Defendants obtained, if at all, from the consumer's mortgage company or servicer.

52.     In numerous instances, consumers who have purchased Defendants' services have suffered and continue to suffer significant economic injury, including:  paying hundreds or thousands of dollars to Defendants and receiving little or no services in return; experiencing significant reductions in their credit scores; having their homes placed in foreclosure; and even losing their homes entirely.

53.     In numerous instances, after consumers have enrolled in Defendants' programs and paid the requested advance fees, Defendants have failed to obtain any loan modification, principal reduction, or other relief to make consumers' mortgage payments more affordable at all.

### Use of Aliases

54.     Defendants required their staff to use aliases when communicating with consumers.  The same staff member typically had different aliases when communicating with consumers on behalf of the different fictitious business names of the Corporate Defendants.  To illustrate, a staff member would use one name when communicating with consumers who believed they were working with "Home Matters" and a different name when communicating consumers who believed they were working with "Golden Home Services."

55.     Defendants required their staff to use aliases when communicating with each other and, as such, staff generally did not know their coworkers' real names.  Similarly, the Individual Defendants would sometimes only communicate with their staff using aliases.  For example, on numerous occasions, Solis Barron only communicated with staff using the alias "Solomon."

### Role of Relief Defendants

56.     MostCap Enterprises has received funds that can be traced directly to Defendants' unlawful acts or practices alleged herein.  For example, in November of 2021, funds were transferred from a South West Consulting bank account, which contained payments made by consumers, to a MostCap Enterprises bank account.  MostCap Enterprises has no legitimate claim to these funds.

57.     Based on the facts and violations of law alleged in this Complaint, the FTC and DFPI have reason to believe that Defendants are violating or are about to violate laws enforced by the FTC and the DFPI.

**THE FTC ACT**

58.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

59.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

**THE CCFPL**

60.     Under the CCFPL, it is unlawful for a "covered person" to "[e]ngage, have engaged, or propose to engage in any unlawful, unfair, deceptive, or abusive act or practice with respect to consumer financial products or services."  Cal. Fin. Code § 90003(a)(1).

61.     A "covered person" includes "[a]ny person that engages in offering or providing a consumer financial product or service to a resident of this state" as well as "[a]ny affiliate of a person . . . if the affiliate acts as a service provider to the person," and "[a]ny service provider to the extent that the person engages in the offering or provision of its own consumer financial product or service."  Cal. Fin. Code § 90005(f).

62.     A "person" is "an individual, corporation, business trust, estate, trust, partnership, proprietorship, syndicate, limited liability company, association, joint venture, government, governmental subdivision, agency or instrumentality, public corporation or joint stock company, or any other organization or legal or commercial entity."  Cal. Fin Code § 90005(m).

63.     A "consumer financial product or service" includes a "financial product or service that is delivered, offered, or provided for use by consumers primarily for personal, family, or household purposes."  Cal. Fin. Code § 90005(e)(1).

64.     A "financial product or service" includes, among other things, "[p]roviding financial advisory services . . . including . . . [p]roviding services to

assist a consumer with debt management or debt settlement, modifying the terms of any extension of credit, or avoiding foreclosure."  Cal. Fin. Code § 90005(k)(8)(B).

65.    The CCFPL also provides that it is unlawful for any person to knowingly or recklessly provide substantial assistance to a covered person or service provider in violation of California Financial Code section 90003(a), or any rule or order issued thereunder, and that the provider of that substantial assistance shall be deemed to be in violation of that section to the same extent as the person to whom that assistance is provided.  Cal. Fin. Code § 90003(b).

## <u>Count I</u>

**Deceptive Representations in Violation of the FTC Act and the CCFPL**

66.    In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of mortgage assistance relief services, Defendants represent, directly or indirectly, expressly or by implication that:

       (a)    Defendants will obtain mortgage loan modifications for consumers that will make consumers' payments substantially more affordable, will substantially lower their interest rates, or will substantially lower their principal amount due;

       (b)    Defendants are affiliated with, endorsed or approved by, or otherwise associated with the United States government, a governmental homeowner assistance plan, or a Federal, State, or local government agency, unit, or department;

       (c)    the consumers who purchase Defendants' services are not obligated to, or should not, make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan;

(d)   the consumers who purchase Defendants' services are protected from foreclosure and cannot be foreclosed on while paying for Defendants' services; and/or

(e)   Defendants' services are subject to a "money-back" guarantee in which consumers will receive all of their money back if Defendants are unsuccessful in accomplishing any represented mortgage loan modification services or result.

67.   In truth and in fact:

(a)   In numerous instances, Defendants do not obtain mortgage loan modifications for consumers that will make consumers' payments substantially more affordable, will substantially lower their interest rates, or will substantially lower their principal amount due;

(b)   Defendants are not and have not been affiliated with, endorsed or approved by, or otherwise associated with the United States government, a governmental homeowner assistance plan, or a Federal, State, or local government agency, unit, or department;

(c)   the consumer who purchased Defendants' services continue to be obligated to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan;

(d)   the consumer who purchased Defendants' service is not protected from foreclosure while paying for Defendants' services; and

(e)   In numerous instances, Defendants do not refund the consumer's payments if Defendants are unsuccessful in

1             accomplishing any represented mortgage loan modification

2             service or result.

3       68.     Therefore, Defendants' representations as set forth in Paragraph 66

4 are false and misleading and constitute deceptive acts or practices in violation of

5 Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

6       69.     Moreover, Defendants' representations as set forth in Paragraph 66

7 constitute deceptive acts or practices with respect to a consumer financial product

8 or service, to wit, assisting a consumer with modifying the terms of any extension

9 of credit, or avoiding foreclosure, in violation of Cal. Fin. Code § 90003(a)(1).

10                         **THE MARS RULE (REGULATION O)**

11       70.     In 2009, Congress directed the FTC to prescribe rules prohibiting

12 unfair or deceptive acts or practices with respect to mortgage loans.  Omnibus Act,

13 § 626, 123 Stat. 678, as clarified by Credit Card Act, § 511, 123 Stat. 1763-64.

14 Pursuant to that direction, the FTC promulgated the MARS Rule, 16 C.F.R. Part

15 322, all but one of the provisions of which became effective on December 29,

16 2010.  Title X of the Dodd-Frank Act, 124 Stat. 1376, transferred the FTC's

17 rulemaking authority under the Omnibus Act, as amended, to the Consumer

18 Financial Protection Bureau ("CFPB").  On December 16, 2011, the CFPB

19 republished the MARS Rule as Regulation O, 12 C.F.R. Part 1015.

20       71.     The MARS Rule (Regulation O) defines "mortgage assistance relief

21 services" as "any service, plan, or program, offered or provided to the consumer in

22 exchange for consideration, that is represented, expressly or by implication, to

23 assist or attempt to assist the consumer with any of the following: (1) Stopping,

24 preventing, or postponing any mortgage or deed of trust foreclosure sale for the

25 consumer's dwelling, any repossession of the consumer's dwelling, or otherwise

26 saving the consumer's dwelling from foreclosure or repossession; (2) Negotiating,

27 obtaining, or arranging a modification of any term of a dwelling loan, including a

28

reduction in the amount of interest, principal balance, monthly payments, or fees; (3) Obtaining any forbearance or modification in the timing of payments from any dwelling loan holder or servicer on any dwelling loan; (4) Negotiating, obtaining, or arranging any extension of the period of time within which the consumer may: (i) Cure his or her default on a dwelling loan, (ii) Reinstate his or her dwelling loan, (iii) Redeem a dwelling, or (iv) Exercise any right to reinstate a dwelling loan or redeem a dwelling; (5) Obtaining any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling; or (6) Negotiating, obtaining or arranging: (i) A short sale of a dwelling, (ii) A deed-in-lieu of foreclosure, or (iii) Any other disposition of a dwelling other than a sale to a third party who is not the dwelling loan holder." 12 C.F.R. § 1015.2.  The MARS Rule (Regulation O), in turn, defines "mortgage assistance relief service provider" as "any person that provides, offers to provide, or arranges for others to provide, any mortgage assistance relief service" other than the dwelling loan holder, the servicer of a dwelling loan, or any agent or contractor of such individual or entity.  *Id.*

72.    The MARS Rule (Regulation O) defines "dwelling loan" as "any loan secured by a dwelling, and any associated deed of trust or mortgage."  *Id.*  The MARS Rule (Regulation O) also defines "dwelling loan holder" as "any individual or entity who holds the dwelling loan that is the subject of the offer to provide mortgage assistance relief services."  *Id.*

73.    The MARS Rule (Regulation O) prohibits any mortgage assistance relief service provider from requesting or receiving payment of any fee or other consideration until the consumer has executed a written agreement between the consumer and the consumer's dwelling loan holder or servicer that incorporates the offer of mortgage assistance relief that the provider obtained from the consumer's dwelling loan holder or servicer.  12 C.F.R. § 1015.5(a).

74.   The MARS Rule (Regulation O) prohibits any mortgage assistance relief service provider from representing, expressly or by implication, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief service, that a consumer cannot or should not contact or communicate with his or her lender or servicer.  12 C.F.R. § 1015.3(a).

75.   The MARS Rule (Regulation O) prohibits any mortgage assistance relief service provider from misrepresenting, expressly or by implication, any material aspect of any mortgage assistance relief service, including but not limited to:

(a)   the likelihood of negotiating, obtaining, or arranging any represented service or result.  12 C.F.R. § 1015.3(b)(1);

(b)   the amount of time it will take the mortgage assistance relief service provider to accomplish any represented service or result.  12 C.F.R. § 1015.3(b)(2);

(c)   that a mortgage assistance relief service is affiliated with, endorsed or approved by, or otherwise associated with (i) the United States government, (ii) any governmental homeowner assistance plan, (iii) any Federal, State, or local government agency, unit, or department, (iv) any nonprofit housing counselor agency or program, (v) the maker, holder, or servicer of the consumer's dwelling loan, or (vi) any other individual, entity, or program.  12 C.F.R. § 1015.3(b)(3)(i)-(vi); and

(d)   the consumer's obligation to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan.  12 C.F.R. § 1015.3(b)(4).

76.     The MARS Rule (Regulation O) prohibits any mortgage assistance relief service provider from failing to place a statement clearly and prominently in every general commercial communication disclosing that (i) the provider is not associated with the government and its service is not approved by the government or any lender, and (ii) in certain cases, a statement disclosing that the lender may not agree to modify a loan, even if the consumer uses the provider's service.  12 C.F.R. §§ 1015.4(a)(1)-(3).

77.     The MARS Rule (Regulation O) prohibits any mortgage assistance relief service provider from failing to place a statement clearly and prominently in every consumer-specific commercial communication (i) confirming that the consumer may stop doing business with the provider or reject an offer of mortgage assistance without having to pay for the services, (ii) disclosing that the provider is not associated with the government and its service is not approved by the government or any lender, and (iii) in certain cases, a statement disclosing that the lender may not agree to modify a loan, even if the consumer uses the provider's service, and  (iv) in certain cases, a statement disclosing that if they stop paying their mortgage, consumers may lose their home or damage their credit.  12 C.F.R. §§ 1015.4(b)(1)-(4) and (c).

78.     Pursuant to the Omnibus Act, § 626, 123 Stat. 678, as clarified by the Credit Card Act, § 511, 123 Stat. 1763-64 and amended by the Dodd-Frank Act, § 1097, 124 Stat. 2102-03, 12 U.S.C. § 5538, and pursuant to Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the MARS Rule (Regulation O) constitutes an unfair or deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and shall be treated as a violation of a rule under Section 18 of the FTC Act, 15 U.S.C. § 57a regarding unfair or deceptive acts or practices.

## Count II

### Advance Payments for Mortgage Assistance Relief Services in Violation of the MARS Rule (Regulation O) and the CCFPL

79.     In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants ask for or receive payment before consumers have executed a written agreement between the consumer and the dwelling loan holder or servicer that incorporates the offer of mortgage assistance relief that the Defendants obtained from the consumer's dwelling loan holder or servicer, in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.5(a).

80.     Moreover, Defendants' violations of law as set forth in Paragraph 79 constitute unlawful acts or practices with respect to a consumer financial product or service, to wit, assisting a consumer with modifying the terms of any extension of credit, or avoiding foreclosure, in violation of Cal. Fin. Code § 90003(a)(1).

## Count III

### Prohibited Representations in Violation of the MARS Rule (Regulation O) and the CCFPL

81.     In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants, in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.3(a), represent, expressly or by implication, that a consumer cannot or should not contact or communicate with his or her lender or servicer.

82.     Moreover, Defendants' violations of law as set forth in Paragraph 81 constitute unlawful acts or practices with respect to a consumer financial product or service, to wit, assisting a consumer with modifying the terms of any extension of credit, or avoiding foreclosure, in violation of Cal. Fin. Code § 90003(a)(1).

## Count IV

### Material Misrepresentations in Violation of the
### MARS Rule (Regulation O) and the CCFPL

83.     In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants, in violation of the MARS Rule (Regulation O), 12 C.F.R. §§ 1015.3(b)(1)-(4), misrepresent, expressly or by implication, material aspects of their services, including, but not limited to:

(a)     Defendants' likelihood of obtaining mortgage loan modifications for consumers that will make their payments substantially more affordable;

(b)     The amount of time it will take Defendants to accomplish any represented service or result;

(c)     Defendants are affiliated with, endorsed or approved by, or otherwise associated with:

(i)     the United States government,

(ii)    any governmental homeowner assistance plan, and

(iii)   any Federal, State, or local government agency, unit, or department; and

(d)     The consumer's obligation to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan.

84.     Moreover, Defendants' material misrepresentations as set forth in Paragraph 83 constitute unlawful and deceptive acts or practices with respect to a consumer financial product or service, to wit, assisting a consumer with modifying the terms of any extension of credit, or avoiding foreclosure, in violation of Cal. Fin. Code § 90003(a)(1).

## Count V

**Failure to Disclose in Violation of the**

**MARS Rule (Regulation O) and the CCFPL**

85.    In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants, in violation of the MARS Rule, fail to clearly and prominently make the following disclosures:

        (a)    in all general commercial communications –

                (1)    "[Name of Company] is not associated with the government, and our service is not approved by the government or your lender," in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.4(a)(1); and

                (2)    "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.4(a)(2);

        (b)    in all consumer-specific commercial communications –

                (1)    "You may stop doing business with us at any time.  You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer].  If you reject the offer, you do not have to pay us.  If you accept the offer, you will have to pay us [insert amount or method for calculating the amount] for our services," in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.4(b)(1);

                (2)    "[Name of company] is not associated with the government, and our service is not approved by the

1          government or your lender," in violation of the MARS

2          Rule (Regulation O), 12 C.F.R. § 1015.4(b)(2);

3     (3)  "Even if you accept this offer and use our service, your

4          lender may not agree to change your loan," in violation

5          of the MARS Rule (Regulation O), 12 C.F.R.

6          § 1015.4(b)(3); and

7     (4)  "If you stop paying your mortgage, you could lose your

8          home and damage your credit," in violation of the MARS

9          Rule (Regulation O), 12 C.F.R. § 1015.4(c).

10       86.    Moreover, Defendants' violations of law as set forth in Paragraph 85

11  constitute unlawful acts or practices with respect to a consumer financial product

12  or service, to wit, assisting a consumer with modifying the terms of any extension

13  of credit, or avoiding foreclosure, in violation of Cal. Fin. Code § 90003(a)(1).

14                      **THE TELEMARKETING SALES RULE**

15       87.    In 1994, Congress directed the FTC to prescribe rules prohibiting

16  abusive and deceptive telemarketing acts or practices pursuant to the

17  Telemarketing Act, 15 U.S.C. §§ 6101-6108.  The FTC adopted the original TSR

18  in 1995, extensively amended it in 2003, and amended certain provisions

19  thereafter.  16 C.F.R. Part 310.

20       88.    The 2003 amendments to the TSR established a national do-not-call

21  registry (the "National Do Not Call Registry"), a list of consumers who do not

22  wish to receive certain types of telemarketing calls.  Consumers can register their

23  telephone numbers on the National Do Not Call Registry without charge either

24  through a toll-free telephone call or at www.donotcall.gov.  The National Do Not

25  Call Registry is maintained by the FTC.

26       89.    The TSR prohibits sellers and telemarketers from initiating outbound

27  telephone calls to numbers on the National Do Not Call Registry unless the seller

28

(1) has obtained the consumer's express agreement, in writing, to place such calls, or (2) has an established business relationship with that consumer, and the consumer has not stated that he or she does not wish to receive such calls. 16 C.F.R. § 310.4(b)(1)(iii)(B).

90.     The TSR prohibits sellers and telemarketers from initiating outbound telephone calls to any consumer when that consumer previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered, or made by or on behalf of the charitable organization for which a charitable contribution is being solicited.  16 C.F.R. § 310.4(b)(1)(iii)(A).

91.     The TSR defines a seller as "any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration."  16 C.F.R. § 310.2(dd).

92.     The TSR defines a telemarketer as "any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor."  16 C.F.R. § 310.2(ff).

93.     The TSR defines an outbound telemarketing call as a "telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution."  16 C.F.R. § 310.2(x).

94.     The TSR defines telemarketing as "a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call."  16 C.F.R. § 310.2(gg).

95.     The FTC allows sellers, telemarketers, and other permitted organizations to access the National Do Not Call Registry at

www.telemarketing.donotcall.gov, to pay the fee(s) if required by the TSR, and to download a list of numbers that are prohibited from being called.

96.    The TSR prohibits sellers and telemarketers from calling any telephone number within a given area code unless the seller on whose behalf the call is made has paid the annual fee for access to the telephone numbers within that area code that are included in the National Do Not Call Registry.  16 C.F.R. § 310.8.  Consumers who receive telemarketing calls to their registered numbers can complain of National Do Not Call Registry violations the same way they registered, through a toll-free telephone call or at www.donotcall.gov, or by otherwise contacting law enforcement authorities.

97.    Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

98.    Defendants are "seller[s]" or "telemarketer[s]" engaged in "telemarketing" as those terms are defined in the TSR, 16 C.F.R. § 310.2(dd), (ff), and (gg).

99.    Defendants initiated outbound telephone calls to consumers in the United States to induce the purchase of Defendants' services and did so without the express agreement of or an established business relationship with the consumers they were calling.

100.    Defendants engage in telemarketing by a plan, program, or campaign conducted to induce the purchase of goods or services by use of one or more telephones and which involves more than one interstate telephone call.

## Count VI

**Calls in Violation of National Do Not Call Registry in Violation of
the TSR and the CCFPL**

101.   In connection with telemarketing, Defendants initiate or cause others to initiate numerous outbound telephone calls to consumers who have registered their telephone numbers on the National Do Not Call Registry in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B).

102.   Moreover, Defendants' violations of law as set forth in Paragraph 101 constitute unlawful acts or practices with respect to a consumer financial product or service, to wit, assisting a consumer with modifying the terms of any extension of credit, or avoiding foreclosure, in violation of Cal. Fin. Code § 90003(a)(1).

## Count VII

**Failure to Pay Required Fee for Access to the National Do Not Call Registry
in Violation of the TSR and the CCFPL**

103.   In connection with telemarketing, Defendants initiate or cause others to initiate numerous outbound telephone calls to telephone numbers within a given area code when Defendants had not, either directly or through another person, paid the required annual fee for access to the telephone numbers within that area code that are included in the National Do Not Call Registry, in violation of the TSR, 16 C.F.R. § 310.8.

104.   Moreover, Defendants' violations of law as set forth in Paragraph 103 constitute unlawful acts or practices with respect to a consumer financial product or service, to wit, assisting a consumer with modifying the terms of any extension of credit, or avoiding foreclosure, in violation of Cal. Fin. Code § 90003(a)(1).

## THE COVID-19 CONSUMER PROTECTION ACT

105.   Enacted on December 27, 2020, the CCPA makes it unlawful, for the duration of the public health emergency declared on January 31, 2020, pursuant to

- 38 -

Section 319 of the Public Health Service Act, for any person, partnership, or corporation to "engage in a deceptive act or practice in or affecting commerce in violation of Section 5(a) of the [FTC] Act (15 U.S.C. 45(a)) that is associated with . . . (2) a government benefit related to COVID-19." Public Law 116-260, 134 Stat 1182, Title XIV, Section 1401(b)(2).

106. The CCPA provides that "[a] violation of subsection (b) shall be treated as a violation of a rule defining an unfair or deceptive act or practice prescribed under Section 18(a)(1)(B) of the [FTC] Act (15 U.S.C. § 57a(a)(1)(B))." *Id*. at Section 1401(c)(1).

## Count VIII

## Deceptive Act Associated with Government Benefits Related to COVID-19 in Violation of the CCPA and the CCFPL

107. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of mortgage assistance relief services, Defendants represent, directly or indirectly, expressly or by implication that Defendants are associated with government mortgage relief programs related to COVID-19.

108. In truth and in fact, Defendants are not associated with government mortgage relief programs related to COVID-19.

109. Therefore, Defendants' representations as set forth in Paragraph 107 are false and misleading and constitute a deceptive act or practice in violation of Section 1401(b)(2) of the CCPA.

110. Moreover, Defendants' misrepresentations as set forth in Paragraph 107 constitute unlawful and deceptive acts or practices with respect to a consumer financial product or service, to wit, assisting a consumer with modifying the terms of any extension of credit, or avoiding foreclosure, in violation of Cal. Fin. Code § 90003(a)(1).

## Count IX

### Relief Defendant

111.   Relief Defendant MostCap Enterprises has received, directly or indirectly, funds or other assets from Defendants that are traceable to funds obtained from Defendants' customers through the unlawful acts or practices described herein.

112.   Relief Defendant MostCap Enterprises is not a bona fide purchaser with legal and equitable title to Defendants' customers' funds or other assets, and Relief Defendant MostCap Enterprises will be unjustly enriched if it is not required to disgorge the funds or the value of the benefit it received as a result of Defendants' unlawful acts or practices.

113.   By reason of the foregoing, Relief Defendant MostCap Enterprises holds fund and assets in constructive trust for the benefit of Defendants' customers.

## CONSUMER INJURY

114.   Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, the MARS Rule (Regulation O), the TSR, the CCPA, and California state law.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request that the Court:

A.     Grant preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action, and to preserve the possibility of effective final relief, including a temporary and preliminary injunction, an order freezing assets, and appointment of a receiver;

1    B.    Enter a permanent injunction to prevent future violations of the FTC
2 Act, the MARS Rule (Regulation O), the TSR, the CCPA, and the CCFPL by
3 Defendants;

4    C.    Award refunds and restitution as provided by the CCFPL, Cal. Fin.
5 Code § 90012(b);

6    D.    Impose monetary penalties as provided by the CCFPL, Cal. Fin. Code
7 § 90012(b)(1), (c);

8    E.    Impose monetary relief and other relief within the Court's power to
9 grant, including restitution or the refund of money;

10    F.    Enter an order against Relief Defendant awarding monetary and other
11 relief; and

12    G.    Award any additional relief as the Court determines to be just and
13 proper.

**FOR PLAINTIFF FEDERAL TRADE COMMISSION**

Respectfully submitted,

Dated: October 28, 2022         */s/ Miles D. Freeman*
                                MILES D. FREEMAN
                                mfreeman@ftc.gov
                                KARINA A. LAYUGAN
                                klayugan@ftc.gov
                                CARLA L. CHEUNG
                                ccheung1@ftc.gov
                                Federal Trade Commission
                                10990 Wilshire Boulevard., Suite 400
                                Los Angeles, CA 90024
                                Tel: (310) 824-4300
                                Fax: (310) 824-4380

                                *Attorneys for Plaintiff Federal Trade Commission*

**FOR PLAINTIFF CALIFORNIA DEPARTMENT OF FINANCIAL PROTECTION AND INNOVATION**

Respectfully submitted,

Dated: October 28, 2022      */s/ Taylor Steinbacher*
TAYLOR STEINBACHER
Taylor.Steinbacher@dfpi.ca.gov
LOUIS LAVERONE
Louis.Laverone@dfpi.ca.gov
California Department of Financial Protection and Innovation
320 West 4th Street, Suite 750
Los Angeles, CA 90013
Tel: (213) 576-7500
Fax: (213) 576-7181

*Attorneys for Plaintiff California Department of Financial Protection and Innovation*

## **FILER'S ATTESTATION OF CONCURRENCE**

Pursuant to Local Rule 5-4.3.4(a)(2), I, Miles D. Freeman, attest that all other signatories concur in the content of the foregoing document and authorize its filing.

Dated:  October 28, 2022                    Respectfully submitted,


*/s/ Miles D. Freeman*
MILES D. FREEMAN
mfreeman@ftc.gov
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Tel: (310) 824-4300
Fax: (310) 824-4380

*Attorney for Plaintiff Federal Trade Commission*