1
2
3
4
5
6
7
8
9
10

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, *et al.*, | Case No. 2:22-cv-06499-FLA (MARx) |
| Plaintiffs, | **[PROPOSED] ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF** |
| v. | |
| GREEN EQUITABLE SOLUTIONS, *et al.*, | |
| Defendants. | |

Plaintiffs, the Federal Trade Commission ("FTC" or "Commission") and the California Department of Financial Protection and Innovation ("DFPI") (collectively, "Plaintiffs"), commenced this action by filing their Complaint for Permanent Injunction, Monetary Relief, and Other Relief on September 12, 2022. Dkt. No. 1. Plaintiffs subsequently filed their First Amended Complaint for Permanent Injunction, Monetary Relief, and Other Relief ("First Amended Complaint") on October 28, 2022. Dkt. No. 43. Plaintiff FTC seeks a permanent injunction, monetary relief, and other relief in this matter pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), 57b; the 2009 Omnibus Appropriations Act, Public Law 111-8, Section 626, 123 Stat. 524, 678 (Mar. 11, 2009), as clarified by the Credit Card Accountability Responsibility and Disclosure Act of 2009, Public Law 111-24, Section 511, 123 Stat. 1734, 1763-64 (May 22, 2009), and amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law 111-203, Section 1097, 124 Stat. 1376, 2102-03 (July 21, 2010), 12 U.S.C. § 5538; the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6101 *et seq*.; and the COVID-19 Consumer Protection Act, Public Law 116-260, 134 Stat. 1182, Title XIV, § 1401. *See id.* Plaintiff DFPI seeks relief including, but not limited to, the recission of contracts, refunds of moneys, restitution, disgorgement, payment of damages or other monetary relief, limits on the activities or functions of the person, and monetary penalties pursuant to the California Consumer Financial Protection Law ("CCFPL"), Cal. Fin. Code § 90000 *et seq*.[1] *See id.*

---

[1] In light of the CCFPL's January 1, 2021 effective date, Plaintiff DFPI asserts no claims and does not seek relief for conduct occurring before that date.

On September 14, 2022, the Court entered a temporary restraining order
with asset freeze, appointment of a receiver, and other equitable relief against
Defendants Apex Consulting & Associates Inc., Green Equitable Solutions,
Infocom Entertainment Ltd, Inc., South West Consulting Enterprises, Inc.,
Dominic Ahiga, and Roger Dyer.  Dkt. No. 25.  On September 29, 2022, the Court
entered a preliminary injunction generally continuing the terms of the temporary
restraining order.  Dkt. No. 40.

On January 3, 2023, Plaintiffs filed Applications for the Clerk's Entry of
Default Against Defendants Advent Consulting, Inc., Apex Consulting &
Associates Inc., Equity Relief Funding, Inc., Green Equitable Solutions, Infocom
Entertainment Ltd, Inc., and South West Consulting Enterprises, Inc. (collectively,
"Corporate Defendants") pursuant to Federal Rule of Civil Procedure 55(a).  Dkt.
Nos. 98-103.  On January 4, 2023, the Clerk entered default against the Corporate
Defendants.  Dkt. No. 104.

On April 26, 2023, Plaintiffs, Defendant Michael Robin Nabati, and Relief
Defendant MostCap Enterprises Corp filed a stipulation to extend the terms of the
preliminary injunction to Defendant Michael Robin Nabati and Relief Defendant
MostCap Enterprises Corp.  Dkt. No. 170.  That same day, the Court granted the
stipulation.  Dkt. No. 171.

On June 9, 2023, Plaintiffs moved for summary judgment as to Defendants
Dominic Ahiga, Roger Scott Dyer, Armando Solis Barron, Michael Robin Nabati
(collectively, "Individual Defendants") on Counts I to VIII of the First Amended
Complaint and as to Relief Defendant MostCap Enterprises Corp ("Relief
Defendant") on Count IX of the First Amended Complaint.  Dkt No. 184.

The Court, having considered the arguments, memoranda, and exhibits filed
in support of Plaintiffs' motion for summary judgment, and all other pleadings and
files in this action, hereby **GRANTS** Plaintiffs' motion for summary judgment and

- 2 -

makes the following findings of law and fact:

## FINDINGS OF FACT AND LAW

1.      This Court has jurisdiction over this matter.

2.      Venue in this District is proper.

3.      The First Amended Complaint charges that Defendants participated in acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the Mortgage Assistance Relief Services Rule ("MARS Rule" (Regulation O)), 12 C.F.R. Part 1015, the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, the COVID-19 Consumer Protection Act, Pub. L. No. 116-260, Title XIV, § 1401(b)(2), and the CCFPL, Cal. Fin. Code § 90000 *et seq*. in connection with the marketing and sale of mortgage assistance relief services.  The First Amended Complaint seeks a permanent injunction, monetary relief, and other relief for Defendants' unlawful acts or practices alleged therein.

4.      Plaintiff FTC has authority to seek the relief it has requested pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b), 57b; the 2009 Omnibus Appropriations Act, Public Law 111-8, Section 626, 123 Stat. 524, 678 (Mar. 11, 2009), as clarified by the Credit Card Accountability Responsibility and Disclosure Act of 2009, Public Law 111-24, Section 511, 123 Stat. 1734, 1763-64 (May 22, 2009), and amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law 111-203, Section 1097, 124 Stat. 1376, 2102-03 (July 21, 2010), 12 U.S.C. § 5538; the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6101 *et seq*.; and the COVID-19 Consumer Protection Act, Public Law 116-260, 134 Stat. 1182, Title XIV, § 1401.

5.      Plaintiff DFPI has authority to seek the relief it has requested pursuant to the CCFPL, Cal. Fin. Code § 90000 *et seq*.

6.      The activities of the Individual Defendants and the Relief Defendant

have been in or affecting commerce, as "commerce" as defined in Section 4 of the FTC Act, 15 U.S.C. § 44, at all times relevant to the First Amended Complaint.

7. The First Amended Complaint stated a claim upon which relief can be granted against Individual Defendants and the Relief Defendant.

8. There is no genuine issue as to any material fact concerning the liability of the Individual Defendants and the Relief Defendant as alleged in the First Amended Complaint, and Plaintiffs are entitled to judgment as a matter of law pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

9. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of mortgage assistance relief services, the Corporate Defendants have made the following false and misleading representations:

    a. That the Corporate Defendants will obtain mortgage loan modifications for consumers that will make consumers' payments substantially more affordable, will substantially lower their interest rates, or will substantially lower their principal amount due;

    b. That the Corporate Defendants are affiliated with, endorsed or approved by, or otherwise associated with the United States government, a governmental homeowner assistance plan, or a Federal, State, or local government agency, unit, or department;

    c. That the consumers who purchase the Corporate Defendants' services are not obligated to, or should not, make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan;

    d. That the consumers who purchase the Corporate Defendants' services are protected from foreclosure and cannot be foreclosed

on while paying for the Corporate Defendants' services; and

e.  That the Corporate Defendants' services are subject to a "money-back" guarantee in which consumers will receive all of their money back if the Corporate Defendants are unsuccessful in accomplishing any represented mortgage loan modification services or result.

The making of these false and misleading representations constitutes deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and constitutes deceptive acts or practices with respect to a consumer financial product or service, to wit, assisting a consumer with modifying the terms of any extension of credit, or avoiding foreclosure, in violation of Cal. Fin. Code § 90003(a)(1). Therefore, the Corporate Defendants violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the CCFPL, Cal. Fin. Code § 90003(a)(1).

10.    In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, the Corporate Defendants have asked for or received payment before consumers have executed a written agreement between the consumer and the dwelling loan holder or servicer that incorporates the offer of mortgage assistance relief that the Corporate Defendants obtained from the consumer's dwelling loan holder or servicer in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.5(a). Such conduct constitutes deceptive acts or practices with respect to a consumer financial product or service, to wit, assisting a consumer with modifying the terms of any extension of credit, or avoiding foreclosure, in violation of Cal. Fin. Code § 90003(a)(1).  Therefore, the Corporate Defendants violated the MARS Rule (Regulation O), 12 C.F.R. § 1015.5(a), and the CCFPL, Cal. Fin. Code § 90003(a)(1).

11.     In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, the Corporate Defendants have represented, expressly or by implication, that a consumer cannot or should not contact or communicate with his or her lender or servicer in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.3(a). Such conduct constitutes deceptive acts or practices with respect to a consumer financial product or service, to wit, assisting a consumer with modifying the terms of any extension of credit, or avoiding foreclosure, in violation of Cal. Fin. Code § 90003(a)(1).  Therefore, the Corporate Defendants violated the MARS Rule (Regulation O), 12 C.F.R. § 1015.3(a), and the CCFPL, Cal. Fin. Code § 90003(a)(1).

12.     In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, the Corporate Defendants, in violation of the MARS Rule (Regulation O), 12 C.F.R. §§ 1015.3(b)(1)-(4), have misrepresented, expressly or by implication, material aspects of their services, including, but not limited to:

    a.  The Corporate Defendants' likelihood of obtaining mortgage loan modifications for consumers that will make their payments substantially more affordable;

    b.  The amount of time it will take the Corporate Defendants to accomplish any represented service or result;

    c.  The Corporate Defendants are affiliated with, endorsed or approved by, or otherwise associated with:

        i.  the United States government,

        ii.  any governmental homeowner assistance plan, and

        iii.  any Federal, State, or local government agency, unit, or

department; and

    d. The consumer's obligation to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan.

The making of these misrepresentations constitutes deceptive acts or practices with respect to a consumer financial product or service, to wit, assisting a consumer with modifying the terms of any extension of credit, or avoiding foreclosure, in violation of Cal. Fin. Code § 90003(a)(1).  Therefore, the Corporate Defendants violated the MARS Rule (Regulation O), 12 C.F.R. §§ 1015.3(b)(1)-(4), and the CCFPL, Cal. Fin. Code § 90003(a)(1).

    13.    In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, the Corporate Defendants have failed to clearly and prominently make the following disclosures:

    a. in all general commercial communications –

        i. "[Name of Company] is not associated with the government, and our service is not approved by the government or your lender," in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.4(a)(1); and

        ii. "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.4(a)(2);

    b. in all consumer-specific commercial communications –

        i. "You may stop doing business with us at any time. You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer]. If you reject the

- 7 -

offer, you do not have to pay us. If you accept the offer, you will have to pay us [insert amount or method for calculating the amount] for our services," in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.4(b)(1);

ii. "[Name of company] is not associated with the government, and our service is not approved by the government or your lender," in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.4(b)(2);

iii. "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.4(b)(3); and

iv. "If you stop paying your mortgage, you could lose your home and damage your credit," in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.4(c).

Such conduct constitutes deceptive acts or practices with respect to a consumer financial product or service, to wit, assisting a consumer with modifying the terms of any extension of credit, or avoiding foreclosure, in violation of Cal. Fin. Code § 90003(a)(1).  Therefore, the Corporate Defendants violated the MARS Rule (Regulation O), 12 C.F.R. §§ 1015.4(a)(1)-(2), (b)(1)-(3), (c), and the CCFPL, Cal. Fin. Code § 90003(a)(1).

14.    In connection with telemarketing, the Corporate Defendants have initiated or caused others to initiate numerous outbound telephone calls to consumers who have registered their telephone numbers on the National Do Not Call Registry in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B).  Such conduct constitutes deceptive acts or practices with respect to a consumer financial

- 8 -

product or service, to wit, assisting a consumer with modifying the terms of any extension of credit, or avoiding foreclosure, in violation of Cal. Fin. Code § 90003(a)(1).  Therefore, the Corporate Defendants violated the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B), and the CCFPL, Cal. Fin. Code § 90003(a)(1).

15.     In connection with telemarketing, the Corporate Defendants have initiated or caused others to initiate numerous outbound telephone calls to telephone numbers within a given area code when the Corporate Defendants had not, either directly or through another person, paid the required annual fee for access to the telephone numbers within that area code that are included in the National Do Not Call Registry, in violation of the TSR, 16 C.F.R. § 310.8.  Such conduct constitutes deceptive acts or practices with respect to a consumer financial product or service, to wit, assisting a consumer with modifying the terms of any extension of credit, or avoiding foreclosure, in violation of Cal. Fin. Code § 90003(a)(1).  Therefore, the Corporate Defendants violated the TSR, 16 C.F.R. § 310.8, and the CCFPL, Cal. Fin. Code § 90003(a)(1).

16.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of mortgage assistance relief services, the Corporate Defendants have represented, directly or indirectly, expressly or by implication that the Corporate Defendants are associated with government mortgage relief programs related to COVID-19.  In truth and in fact, the Corporate Defendants have never been associated with government mortgage relief programs related to COVID-19.  The making of these representations constitutes deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and constitutes deceptive acts or practices with respect to a consumer financial product or service, to wit, assisting a consumer with modifying the terms of any extension of credit, or avoiding foreclosure, in violation of Cal. Fin. Code § 90003(a)(1). Therefore, the Corporate Defendants violated the COVID-19 Consumer Protection

Act, Pub. L. No. 116-260, Title XIV, § 1401(b)(2), and the CCFPL, Cal. Fin. Code § 90003(a)(1).

17.    Corporate Defendants have received at least $15,891,536.97 from payments by consumers as a direct result of the Corporate Defendants' unlawful acts and practices set forth in Findings 9 to 16 above.  Therefore, the Corporate Defendants have caused consumer injury in the amount of at least $15,891,536.97.

18.    Relief Defendant has received, directly or indirectly, funds or other assets from Defendants in the amount of at least $50,900 dollars that are traceable to funds obtained from Defendants' customers through the unlawful acts or practices set forth in Findings 9 to 16 above.  Relief Defendant has never been a bona fide purchaser with legal and equitable title to Defendants' customers' funds or other assets.  Relief Defendant will be unjustly enriched if it is not required to disgorge the funds or the value of the benefit it has received as a result of Defendants' unlawful acts or practices.  Therefore, Relief Defendant has held fund and assets in constructive trust for the benefit of Defendants' customers.

19.    At all times relevant to the First Amended Complaint, the Corporate Defendants operated as a common enterprise while engaged in the unlawful acts and practices set forth in Findings 9 to 16 above.  Corporate Defendants have conducted business through an interrelated network of companies that have common ownership, officers, managers, business functions, employees, and office locations, and that have comingled funds.  Corporate Defendants have used almost identical advertising, marketing, and other communications directed at consumers and have blurred corporate distinctions when interacting with consumers.  Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices set forth in Findings 9 to 16 above.

20.    At all times relevant to the First Amended Complaint, Individual

Defendants formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in Findings 9 to 16 above.  At all times relevant to the First Amended Complaint, Individual Defendants knew of or were recklessly indifferent to the acts and practices of the Corporate Defendants as set forth in Findings 9 to 16 above.  *See FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1101–02 (9th Cir. 2014).  Moreover, the Individual Defendants knowingly or recklessly provided substantial assistance to the Corporate Defendants' scheme, and thus are also liable to the same to the same extent as the Corporate Defendants under California law.  Cal. Fin. Code § 90003(b).  Thus, Individual Defendants are each jointly and severally liable for monetary and injunctive relief.

21.  The danger of future violations by the Individual Defendants justifies the issuance of permanent injunctive relief.  Specifically, it is proper in this case to issue an injunction that:  (a) bans Individual Defendants from advertising, marketing, promoting, offering for sale, or selling, or assisting others in the advertising, marketing, promoting, offering for sale, or selling, of any debt relief product or service; (b) bans Individual Defendants from participating in telemarketing; (c) prohibits Individual Defendants from making various misrepresentations in connection with the advertising, marketing, promoting, offering for sale, or selling of any product or service; (d) requires Individual Defendants to have substantiation for claims regarding any product or service; (e) prohibits Individual Defendants from disclosing, using, or benefitting from customer information of any person that any Defendant obtained before the entry of this Order in connection with their marketing and sale of mortgage assistance relief services; and (e) provides such other ancillary relief as is necessary to assist Plaintiffs and the Court in monitoring Individual Defendants' compliance with such a permanent injunction.

22.  As set forth above, Defendants have received at least $15,891,536.97

from payments by consumers as a direct result of the Corporate Defendants' violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the MARS Rule (Regulation O), 12 C.F.R. Part 1015, the TSR, 16 C.F.R. Part 310, the COVID-19 Consumer Protection Act, Pub. L. No. 116-260, Title XIV, § 1401(b)(2), and the CCFPL, Cal. Fin. Code § 90000 *et seq.* It is therefore proper in this case to enter a monetary judgment of $15,891,536.97 against Individual Defendants, jointly and severally.

23.     Pursuant to Federal Rule of Civil Procedure 65(d), the provisions of this Order are binding upon each Individual Defendant, their successors and assigns, and their officers, agents, employees and attorneys, and upon those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise.

24.     Entry of this Order is in the public interest.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.     **"Assisting Others"** includes:

1.     performing customer service functions, including receiving or responding to consumer complaints;

2.     formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including any telephone sales script, direct mail solicitation, or the design, text, or use of images of any Internet website, email, or other electronic communication;

3.     formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including web or Internet Protocol addresses or domain name

registration for any Internet websites, affiliate marketing services, or media placement services;

    4.   providing names of, or assisting in the generation of, potential customers; or

    5.   performing marketing, billing, or payment services of any kind.

B.   **"Corporate Defendants"** means Advent Consulting, Inc.; Apex Consulting & Associates Inc., also d/b/a Golden Home Services America and Home Matters USA Consulting; Equity Relief Funding, Inc., also d/b/a Academy Home Services America, Atlantic Pacific Service United, Golden Home Services United, and Home Matters USA Group; Green Equitable Solutions, also d/b/a Academy Home Services and Westwood Advocates; Infocom Entertainment Ltd, Inc., also d/b/a Amstar Service Group, Atlantic Pacific Service, and Home Relief Service of America; and South West Consulting Enterprises, Inc., also d/b/a Academy Home Service, Atlantic Pacific Service Group, Golden Homes Services of America Enterprises, and Home Matters USA; and their successors and assigns.

C.   **"Debt Relief Product or Service"** means:

    1.   With respect to any mortgage, loan, debt, or obligation between a Person and one or more secured or unsecured creditors or debt collectors, any Product or Service represented, expressly or by implication, to:

        a.   stop, prevent, or postpone any mortgage or deed of foreclosure sale for a Person's dwelling, any other sale of collateral, any repossession of a Person's dwelling or other collateral, or otherwise save a Person's dwelling or other collateral from foreclosure or repossession;

- 13 -

b.   negotiate, obtain, or arrange a modification, or
renegotiate, settle, or in any way alter any terms of the
mortgage, loan, debt, or obligation, including a
reduction in the amount of interest, principal balance,
monthly payments, or fees owed by a Person to a
secured or unsecured creditor or debt collector;

c.   obtain any forbearance or modification in the timing
of payments from any secured or unsecured holder or
servicer of any mortgage, loan, debt, or obligation;

d.   negotiate, obtain, or arrange any extension of the
period of time within which a Person may (i) cure his
or her default on the mortgage, loan, debt, or
obligation, (ii) reinstate his or her mortgage, loan,
debt, or obligation, (iii) redeem a dwelling or other
collateral, or (iv) exercise any right to reinstate the
mortgage, loan, debt, or obligation or redeem a
dwelling or other collateral;

e.   obtain any waiver of an acceleration clause or balloon
payment contained in any promissory note or contract
secured by any dwelling or other collateral; or

f.   negotiate, obtain, or arrange (i) a short sale of a
dwelling or other collateral, (ii) a deed-in-lieu of
foreclosure, or (iii) any other disposition of a
mortgage, loan, debt, or obligation other than a sale to
a third party that is not the secured or unsecured loan
holder.

- 14 -

The foregoing shall include any manner of claimed assistance, including auditing or examining a Person's application for the mortgage, loan, debt, or obligation.

2.      With respect to any loan, debt, or obligation between a Person and one or more unsecured creditors or debt collectors, any Product or Service represented, expressly or by implication, to:

a.      repay one or more unsecured loans, debts, or obligations; or

b.      combine unsecured loans, debts, or obligations into one or more new loans, debts, or obligations.

D.      **"Defendants"** means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

E.      **"Individual Defendants"** means Dominic Ahiga, a/k/a Michael Dominic Grinnell; Roger Scott Dyer; Armando Solis Barron; and Michael Robin Nabati.

F.      "**Person**" means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

G.      **"Product or Service"** means any good or service, including any plan or program.

H.      **"Receiver"** means the David P. Stapleton of Stapleton Group.

I.      **"Relief Defendant"** means MostCap Enterprises Corp, and its successors and assigns.

J.      "**Telemarketing**" means any plan, program, or campaign which is conducted to induce the purchase of goods or services by use of one or more telephones, and which involves a telephone call, whether or not covered by the Telemarketing Sales Rule.

- 15 -

# ORDER

## I.    BAN ON DEBT RELIEF PRODUCTS AND SERVICES

IT IS ORDERED that the Individual Defendants are permanently restrained and enjoined, whether acting directly or through an intermediary, from advertising, marketing, promoting, offering for sale, or selling, or Assisting Others in the advertising, marketing, promoting, offering for sale, or selling, of any Debt Relief Product or Service.

## II.    BAN ON TELEMARKETING

IT IS FURTHER ORDERED that the Individual Defendants are permanently restrained and enjoined from participating in Telemarketing, whether directly or through an intermediary.

## III.    PROHIBITION AGAINST MISREPRESENTATIONS

IT IS FURTHER ORDERED that Individual Defendants, Individual Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any Product or Service, are permanently restrained and enjoined from misrepresenting, or Assisting Others in misrepresenting, expressly or by implication:

A.    any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy, including the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer;

B.    that any Person is affiliated with, endorsed or approved by, or otherwise connected to any other Person; government entity; public, non-profit, or other non-commercial program, including any

government homeowner assistance plan or government mortgage relief program related to COVID-19; or any other program;

C.     the nature, expertise, position, or job title of any Person who provides any Product or Service; or

D.     any other fact material to consumers concerning any Product or Service, such as:  the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, time frame in which consumers can expect certain results; nature, or central characteristics.

## IV.   PROHIBITION AGAINST UNSUBSTANTIATED CLAIMS

IT IS FURTHER ORDERED that Individual Defendants, Individual Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the promoting or offering for sale of any Product or Service, are permanently restrained and enjoined from making any representation or Assisting Others in making any representation, expressly or by implication, about the benefits, performance, or efficacy of any Product or Service, unless the representation is nonmisleading, including that, at the time such representation is made, they possess and rely upon competent and reliable evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant fields, when considered in light of the entire body of relevant and reliable evidence, to substantiate that the representation is true.

## V.   MONETARY JUDGMENT FOR RELIEF AGAINST INDIVIDUAL DEFENDANTS

IT IS FURTHER ORDERED that judgment in the amount of Fifteen Million Eight Hundred Ninety-One Thousand and Five Hundred Thirty-Six Dollars and Ninety-Seven Cents ($15,891,536.97) is entered in favor of Plaintiffs against Individual Defendants, jointly and severally, as monetary relief.

## VI.   MONETARY JUDGMENT FOR RELIEF AGAINST RELIEF DEFENDANT

IT IS FURTHER ORDERED that judgment in the amount of Fifty Thousand Nine Hundred Dollars and Zero Cents ($50,900.00) is entered in favor of Plaintiffs against Relief Defendant as monetary relief.

## VII.   MONETARY JUDGMENT FOR CIVIL PENALTY

IT IS FURTHER ORDERED that judgment in the amount of Three Million and Ninety Five Thousand Dollars and Zero Cents ($3,095,000.00) is entered in favor of Plaintiff DFPI against Individual Defendants, jointly and severally, as a civil penalty.

## VIII.   ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A.   The monetary judgments set forth in Sections V to VII are enforceable against any asset, real or personal, whether located within the United States or outside the United States, owned jointly or singly by, on behalf of, for the benefit of, in trust by or for, or as a deposit for future goods or services to be provided to, any Individual Defendant or the Relief Defendant, whether held as tenants in common, joint tenants with or without the right of survivorship, tenants by the entirety, and/or community property.

B.   In partial satisfaction of the judgment against the Individual Defendants in Sections V and VII, any financial or brokerage

institution, escrow agent, title company, commodity trading company,
business entity, or Person, whether located within the United States or
outside the United States, that holds, controls, or maintains accounts
or assets of, on behalf of, or for the benefit of, any Individual
Defendant, whether real or personal, whether located within the
United States or outside the United States, shall, within ten (10)
business days from receipt of a copy of this Order, turn over such
account or asset to Plaintiff or their designated agent, including, but
not limited to:

**Accounts in the Name of Roger Dyer**

i.      Wells Fargo Bank shall, within ten (10) business days of receipt
        of a copy of this Order, transfer to the Receiver or his
        designated agent all funds, if any, in account number xxxx4768
        in the name of Roger Dyer.

ii.     Fidelity Brokerage shall, within ten (10) business days of
        receipt of a copy of this Order, transfer to the Receiver or his
        designated agent all funds, if any, in:

        a.  Account number xxxx0167 in the name of Roger Dyer,

        b.  Account number xxxx5103 in the name of Roger Dyer,
            and

        c.  Account number xxxx4656 in the name of Roger Dyer.

iii.    JPMorgan Chase shall, within ten (10) business days of receipt
        of a copy of this Order, transfer to the Receiver or his
        designated agent all funds, if any, in account number xxxx5861
        in the name of Roger Dyer.

**Accounts in the Name of Dominic Ahiga**

iv.   PNC Bank shall, within ten (10) business days of receipt of a copy of this Order, transfer to the Receiver or his designated agent all funds, if any, in account number xxxx5848 in the name of Dominic Ahiga.

**Accounts in the Name of Dominic Ahiga Revocable Living Trust, Dominic Ahiga Trustee**

v.   Wells Fargo Bank shall, within ten (10) business days of receipt of a copy of this Order, transfer to the Receiver or his designated agent all funds, if any, in account number xxxx7453 in the name of Dominic Ahiga Revocable Living Trust, Dominic Ahiga Trustee.

**Accounts in the Name of Michael D. Grinnell**

vi.   Capital One Bank shall, within ten (10) business days of receipt of a copy of this Order, transfer to the Receiver or his designated agent all funds, if any, in account number xxxx2884 in the name of Michael D. Grinnell.

**Accounts in the Name of Armando Solis Barron**

vii.   Wells Fargo Bank shall, within ten (10) business days of receipt of a copy of this Order, transfer to the Receiver or his designated agent all funds, if any, in:

   a.   Account xxxx8611, in the name of Armando Solis Barron,

   b.   Account number xxxx50177, in the name of Armando Solis Barron, and

   c.   Account number xxxx8140 in the name of Armando Solis Barron.

viii.   Navy Federal Credit Union shall, within ten (10) business days of receipt of a copy of this Order, transfer to the Receiver or his designated agent all funds, if any, in:

a.   Account number xxxx5309 in the name of Armando Solis Barron, and

b.   Account number xxxx7708 in the name of Armando Solis Barron.

**Accounts in the Name of Michael Nabati**

ix.   Wells Fargo Bank shall, within ten (10) business days of receipt of a copy of this Order, transfer to the Receiver or his designated agent all funds, if any, in:

a.   Account number xxxx2645 in the name of Michael R. Nabati, and

b.   Account number xxxx8180 in the name of Michael R. Nabati.

x.   TD Bank shall, within ten (10) business days of receipt of a copy of this Order, transfer to the Receiver or his designated agent all funds, if any, in account number xxxx8740 in the name of Michael R. Nabati.

xi.   PayPal Holdings, Inc. shall, within ten (10) business days of receipt of a copy of this Order, transfer to the Receiver or his designated agent all funds, if any, in:

a.   Account number xxxx1372 in the name of Michael R. Nabati,

b.   Account number xxxx30715 in the name of Michael R. Nabati,

c.  Account number xxxx3262 in the name of Michael R. Nabati,

d.  Account number xxxx2268 in the name of Michael R. Nabati,

e.  In account number xxxx7629 in the name of Michael R. Nabati,

f.  Account number xxxx3602 in the name of Michael R. Nabati,

g.  Account number xxxx3306 in the name of Michael R. Nabati,

h.  Account number xxxx5971 in the name of Michael R. Nabati,

i.  Account number xxxx5292 in the name of Michael R. Nabati,

j.  Account number xxxx7931 in the name of Michael R. Nabati,

k.  Account number xxxx1227 in the name of Michael R. Nabati,

l.  Account number xxxx7524 in the name of Michael R. Nabati,

m.  Account number xxxx1504 in the name of Michael R. Nabati,

n.  Account number xxxx7098 in the name of Michael R. Nabati,

o.  Account number xxxx8652 in the name of Michael R. Nabati,

1      p. Account number xxxx9776 in the name of Michael R.

2       Nabati,

3      q. Account number xxxx3123 in the name of Michael R.

4       Nabati,

5      r. Account number xxxx9685 in the name of Michael R.

6       Nabati,

7      s. Account number xxxx0914 in the name of Michael R.

8       Nabati,

9      t. Account number xxxx1891 in the name of Michael R.

10      Nabati,

11      u. Account number xxxx8742 in the name of Michael R.

12      Nabati,

13      v. Account number xxxx4259 in the name of Michael R.

14      Nabati, and

15      w. Account number xxxx7684 in the name of Michael R.

16      Nabati.

17   **Accounts in the Name of Michael Robin Nabati Irrevocable**

18     **Living Trust**

19   xii. Wells Fargo Bank shall, within ten (10) business days of receipt

20     of a copy of this Order, transfer to the Receiver or his

21     designated agent all funds, if any, in account number xxxx0013

22     in the name of Michael Robin Nabati Irrevocable Living Trust.

23   **Real Property in the Name of Michael Robin Nabati Irrevocable**

24     **Living Trust**

25   xiii. 109 Harbor Woods Place, #109 Newport Beach, CA92660

26   xiv. 203 Harbor Woods Place #203  Newport Beach, CA 92660

27

28           - 23 -

C.   In partial satisfaction of the judgment against the Relief Defendant in Section VI, any financial or brokerage institution, escrow agent, title company, commodity trading company, business entity, or Person, whether located within the United States or outside the United States, that holds, controls, or maintains accounts or assets of, on behalf of, or for the benefit of, the Relief Defendant, whether real or personal, whether located within the United States or outside the United States, shall, within ten (10) business days from receipt of a copy of this Order, turn over such accounts or assets to the Receiver or his designated agent, including, but not limited to:

**Accounts in the name of MostCap Enterprises, Corp.**

i.   Wells Fargo Bank shall, within ten (10) business days of receipt of a copy of this Order, transfer to the Receiver or his designated agent all funds, if any, in account number xxxx3506 in the name of Mostcap Enterprises, Corp.

D.   Individual Defendants and the Relief Defendant shall disclose all assets, including personal property, not previously disclosed to Plaintiffs and the Receiver.

E.   Individual Defendants and the Relief Defendant shall cooperate fully with Plaintiffs and the Receiver and shall takes steps as any of them may require to transfer possession of the assets covered by Sections V to VII and to assist in the final liquidation of the assets, including executing any documents, procuring the signatures of any person or entity under their control, providing access to the assets, providing any necessary information, and turning over the assets.

F.   The asset freeze is modified to permit the transfers identified in this Section.  Upon satisfaction of the monetary judgments set forth in

Sections V to VII, the asset freeze as to the Individual Defendants and Relief Defendant is dissolved.

G.   Individual Defendants and Relief Defendant relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

H.   Money received by Plaintiffs will be used to satisfy the payment of the monetary relief judgments in Sections V and VI before being used to satisfy the civil penalty awarded in Section VII.

I.   All money received by Plaintiffs pursuant to Sections V and VI may be deposited into a fund administered by Plaintiffs or their designees to be used for consumer relief, such as redress and any attendant expenses for the administration of any redress fund.  If representatives of Plaintiffs decide that direct redress to consumers is wholly or partially impracticable or money remains after such redress is completed, Plaintiffs may apply any remaining money for such related relief (including consumer information remedies) as they determine to be reasonably related to the Individual Defendants' and the Relief Defendant's practices alleged in the First Amended Complaint, or Plaintiffs may distribute funds to Plaintiff DFPI to satisfy the payment of any civil penalty awarded in Section VII. Individual Defendants and Relief Defendants have no right to challenge any actions Plaintiffs or their representatives may take pursuant to this Section.

J.   Any money received by Plaintiffs pursuant to Section VII shall be provided to Plaintiff DFPI to satisfy the payment of any civil penalty awarded in Section VII, pursuant to Cal. Fin. Code § 90007. Individual Defendants and Relief Defendants have no right to

- 25 -

challenge any actions Plaintiff DFPI or its representatives may take pursuant to this Section.

K.      Individual Defendants and Relief Defendant acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which they must submit to Plaintiffs within seven days of entry of this Order, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

## IX.    CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Individual Defendants, Individual Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the promoting or offering for sale of Product or Service, are permanently restrained and enjoined from directly or indirectly:

A.      failing to provide sufficient customer information to enable Plaintiffs to efficiently administer consumer redress.  If representatives of the Plaintiffs request in writing any information related to redress, Individual Defendants must provide it, in the form prescribed by the Commission, within 14 days;

B.      disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection with any Debt Relief Product or Service; and

C.      failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from representatives of Plaintiffs.

Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## X.    ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Individual Defendants and Relief Defendants obtain acknowledgments of receipt of this Order:

A.      Each Individual Defendant and Relief Defendant, within 7 days of entry of this Order, must submit to Plaintiffs an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.  For 5 years after entry of this Order, each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly must deliver a copy of this Order to:  (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order;  and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C. From each individual or entity to which an Individual Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XI.   COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Individual Defendants make timely submissions to the Commission:

A.   One year after entry of this Order, each Individual Defendant must submit a compliance report, sworn under penalty of perjury, that must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.   For 20 years after entry of this Order, each Individual Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.   Each Individual Defendant must report any change in:  (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Individual Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or

1                  practices subject to this Order.

2.      Additionally, each Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.      Each Individual Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:  Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580.  The subject line must begin: FTC, et al. v. Green Equitable Solutions, et al.

## XII.   RECORDKEEPING

IT IS FURTHER ORDERED that Individual Defendants must create certain records for 20 years after entry of the Order, and retain each such record for 5 years.  Specifically, each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.     accounting records showing the revenues from all goods or services sold;

B.     personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.     records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.     all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to Plaintiffs; and

E.     a copy of each unique advertisement or other marketing material.

## XIII.   COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Individual Defendants' and the Relief Defendants' compliance with this Order, including any failure to transfer any assets as required by this Order:

A.     Within 14 days of receipt of a written request from a representative of Plaintiffs, each Individual Defendant and Relief Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions;

and produce documents for inspection and copying.  Plaintiffs are also
authorized to obtain discovery, without further leave of court, using
any of the procedures prescribed by Federal Rules of Civil Procedure
29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.    For matters concerning this Order, Plaintiffs are authorized to
communicate directly with each Individual Defendant and the Relief
Defendant.  Individual Defendants and the Relief Defendant must
permit representatives of Plaintiffs to interview any employee or other
Person affiliated with any Defendant who has agreed to such an
interview.  The Person interviewed may have counsel present.

C.    Plaintiffs may use all other lawful means to monitor compliance with
this Order, including by posing, through its representatives, as
consumers, suppliers, or other individuals or entities to Individual
Defendants, Relief Defendants, or any individual or entity affiliated
with these Defendants, without the necessity of identification or prior
notice.  Nothing in this Order limits the FTC's lawful use of
compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15
U.S.C. §§ 49, 57b-1.

D.    Upon written request from a representative of Plaintiffs, any consumer
reporting agency must furnish consumer reports concerning the
Individual Defendants, pursuant to Section 604(1) of the Fair Credit
Reporting Act, 15 U.S.C. §1681b(a)(1).

### XIV.    RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this
matter for purposes of construction, modification, and enforcement of this Order.

\\\

SO ORDERED, this _____ day of _____, 20__.


_____
FERNANDO L. AENLLE-ROCHA
United States District Judge