DAVID R. ZARO (BAR NO. 124334)
E-Mail: dzaro@allenmatkins.com
JOSHUA A. DEL CASTILLO (BAR NO. 239015)
E-Mail: jdelcastillo@allenmatkins.com
MATTHEW D. PHAM (BAR NO. 287704)
E-Mail: mpham@allenmatkins.com
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816

Attorneys for Receiver
DAVID P. STAPLETON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>GREEN EQUITABLE SOLUTIONS, et al.,<br><br>Defendants. | Case No. 2:22-cv-06499-FLA-MAR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF RECEIVER, DAVID P. STAPLETON, FOR ORDER: (1) APPROVING FINAL REPORT AND ACCOUNTING; (2) AUTHORIZING PAYMENT OF FINAL FEE APPLICATION OF RECEIVER AND PROFESSIONALS; (3) ESTABLISHING RESERVE FOR COSTS OF CLOSING RECEIVERSHIP; (4) AUTHORIZING TRANSFER OF RECEIVERSHIP ASSETS TO PLAINTIFF REGULATORS; (5) AUTHORIZING ABANDONMENT OR DESTRUCTION OF RECORDS; AND (6) CLOSING RECEIVERSHIP AND DISCHARGING AND RELEASING RECEIVER**<br><br>[Notice of Motion and Motion; Declaration of David P. Stapleton; Final Report and Accounting; Final Fee Application; and [Proposed] Order submitted concurrently herewith]<br><br>Date: May 3, 2024<br>Time: 1:30 p.m.<br>Judge Hon. Fernando L. Aenlle-Rocha<br>Ctrm: 6B |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................5

II. RELEVANT FACTUAL BACKGROUND .........................................................7

III. RECOMMENDED CLOSING AND DISCHARGE PROCEDURES ..............................................................................................10

    A. Receivership Wind-Down And Final Closing Tasks ..........................10

        1. Approval of the Receiver's Final Report and Accounting ................................................................................10

        2. Payment of Fees and Expenses of Receiver and his Professionals ..............................................................10

        3. Recovery of Outstanding Turnover Amounts .........................10

        4. Turnover of Receivership Assets to the Regulators .................11

        5. Establishment of the Reserve ....................................................11

        6. Abandonment or Destruction of Records .................................12

        7. Completing Outstanding Closing Tasks for the Receivership and Discharging and Releasing Receiver ..................................................................................12

IV. ARGUMENT .......................................................................................................13

    A. The Proposed Final Closing Tasks Should Be Authorized And The Receiver Discharged And Released ...................................13

    B. The Final Fee Application Is Reasonable And Appropriate, And Payment Of All Outstanding Fees and Expenses Should Be Authorized At This Time .................................14

        1. The Fees and Expenses Requested in the Final Fee Application are Reasonable ......................................................15

        2. The Fees and Expenses Incurred in the Receivership Satisfy the Ninth Circuit Standard for Presumptive Reasonableness ..........................................................................16

        3. The Fees and Expenses Requested in the Final Fee Application have been Submitted to the Regulators, Without Objection ..................................................................17

        4. The Receiver Should be Authorized to Pay Allowed Fees and Expenses from Cash on Hand ...................................18

V. CONCLUSION ....................................................................................................19

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atl. Tr. Co. v. Chapman*,
    208 U.S. 360 (1908) ............................................................................... 14

*Bennett v. Williams*,
    892 F.2d 822 (9th Cir. 1989) .................................................................. 13

*Blum v. Stenson*,
    465 U.S. 886 (1984) ............................................................................... 16

*CFTC v. Topworth Int'l*,
    205 F.3d 1107 (9th Cir. 1999) ................................................................ 13

*Drilling & Expl. Corp. v. Webster*,
    69 F.2d 416 (9th Cir. 1934) .................................................................... 14

*Finn v. Childs Co.*,
    181 F.2d 431 (2d Cir. 1950) ................................................................... 17

*Fleet Nat'l Bank v. H&D Entm't*,
    926 F.Supp. 226 (D. Mass. 1996) .......................................................... 13

*Gaskill v. Gordon*,
    27 F.3d 248 (7th Cir. 1994) .................................................................... 14

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
    109 F.3d 602 (9th Cir. 1997) .................................................................. 16

*In re Phila. & Reading Coal & Iron Co.*,
    61 F. Supp. 120 (E.D. Pa. 1945) ...................................................... 17, 18

*In re San Vicente Med. Partners, Ltd.*,
    962 F.2d 1402 (9th Cir. 1992) .......................................................... 15, 16

*In rethinking Machs. Corp.*,
    182 B.R. 365 (D. Mass. 1995) ................................................................ 13

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ................................................................ 16

*Quilling v. Trade Partners, Inc.*,
    572 F.3d 293 (6th Cir. 2009) .................................................................. 15

*SEC v. Am. Capital Invs.*,
    98 F.3d 1133 (9th Cir. 1996) .................................................................. 13

*SEC v. Basic Energy & Affiliated Res.*, 273
    F.3d 657 (6th Cir. 2001) ......................................................................... 13

**Page(s)**

*SEC v. Elliot*,
 953 F.2d 1560 (11th Cir. 1992) .................................................................. 13, 14

*SEC v. Fifth Ave. Coach Lines, Inc.*,
 364 F. Supp. 1220 (S.D.N.Y. 1973) ............................................................ 15, 18

*SEC v. Forex Asset Mgmt., LLC*,
 242 F.3d 325 (5th Cir. 2001) ............................................................................. 13

*SEC v. Hardy*,
 803 F.2d 1034 (9th Cir. 1986) ........................................................................... 13

*SEC v. Health Maint. Ctrs., Inc.*,
 2002 WL 34388014 (W.D. Wash. 2002) .......................................................... 13

*SEC v. Wang*,
 944 F.2d 80 (2d Cir. 1991) ................................................................................ 13

*Sw. Media, Inc. v. Rau*,
 708 F.2d 419 (9th Cir. 1983) ............................................................................. 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION.

David P. Stapleton (the "Receiver") was appointed as the permanent receiver for Defendants Green Equitable Solutions, also dba Academy Home Services; South West Consulting Enterprises, Inc. also dba Academy Home Service, Atlantic Pacific Service Group, Golden Home Services of America Enterprises, and Home Matters USA; Apex Consulting & Associates Inc. also dba Golden Home Services America and Home Matters USA Consulting; Infocom Entertainment Ltd., Inc., also dba Amstar Service Group, Atlantic Pacific Service, and Home Relief Service of America; and their respective subsidiaries and affiliates, including but not limited to The Michael R. Nabati Irrevocable Living Trust dated December 23, 2020 (each an "Entity", and collectively, the "Receivership Entities" or "Entities") pursuant to this Court's September 14, 2022 *Order Granting Plaintiffs' Ex Parte Application For Temporary Restraining Order With Asset Freeze, Appointment Of Temporary Receiver, Limited Expedited Discovery, And Order To Show Cause Why Preliminary Injunction Should Not Issue* (the "Appointment Order") [ECF No. 25], as reaffirmed by the Court's September 29, 2022 Order Granting Plaintiffs' *Request For Preliminary Injunction With Asset Freeze And Extending Authorization Of Temporary Receiver Through The Pendency Of The Action* (the "Preliminary Injunction") [ECF No. 40].

Pursuant to the Appointment Order, Preliminary Injunction, the Court's subsequent orders regarding the Receiver's administration of the estate of the Receivership Entities (the "Estate"), and law governing federal equity receivers, the Receiver's most significant responsibilities during the pendency of the instant receivership have included:

1.   Obtaining records relevant to the business and financial activities of the Receivership Entities and their personnel, and performing an accounting of the Receivership Entities' financial activities and condition;

2. Assuming control and authority over the Entities' assets (the "Receivership Assets" or "Assets");

3. Investigating, locating, and recovering Receivership Assets, including Assets unlawfully diverted to or for the benefit of third parties;

4. Marshaling and monetizing available Receivership Assets to maximize the value of the Estate in anticipation of a potential distribution to Estate creditors; and

5. Preparing periodic updates and reports to the Court regarding his efforts and the status of the receivership.

The specific tasks undertaken by and accomplishments of the Receiver, some of which are addressed herein, are presented in more detail in the Receiver's concurrently submitted *Final Report and Accounting of Receiver, David P. Stapleton* (the "Final Report"). For the purposes of this Motion, and by way of summary, the Receiver believes he has diligently and appropriately discharged those duties and obligations assigned to him by the Court pursuant to the terms of the Appointment Order and the Preliminary Injunction, which reaffirmed the Receiver's duties and authority and extended his appointment for the duration of the above-entitled action. As of the date of this Motion, the Receiver believes that he has, with the assistance of his counsel, Allen Matkins Leck Gamble Mallory & Natsis, LLP ("Allen Matkins"), satisfied his responsibilities to the fullest extent possible, and that the cost to the Estate of continuing the present receivership would likely exceed any likely potential benefit. As a consequence, the Receiver has concluded that it is now appropriate to bring the instant receivership to a close, pay outstanding fees and costs, and discharge and release the Receiver. The Receiver therefore respectfully requests that this Court enter an Order: (1) approving the Receiver's Final Report and the actions taken by the Receiver during the pendency of his appointment; (2) authorizing the payment of the fees and expenses presented in the Receiver's and Allen Matkins' concurrently submitted *Final Application for Payment of Fees and*

*Reimbursement of Expenses of Receiver, David P. Stapleton, and his Professionals* (the "Final Fee Application"); (3) authorizing the Receiver to establish and set aside a reserve in the amount of no more than $30,000 (the "Reserve") to cover the anticipated fees and expenses associated with winding down the receivership; (4) authorizing the Receiver to transfer (the "Remittance") all Receivership Asset funds remaining after the payment of administrative fees and costs to the plaintiff regulators; (5) authorizing the Receiver to abandon or destroy, as appropriate, all Receivership Entity records in his possession, within 90 days after his discharge as receiver; and (6) authorizing the Receiver to undertake and complete those tasks necessary to wind-down and close the receivership, as detailed further below, and thereafter discharging and releasing the Receiver.

As is customary in similar federal receivership matters, the Receiver will submit a Declaration to the Court certifying the completion of all closing tasks described herein (the "Final Declaration"), and respectfully requests that the receivership be deemed terminated, without further Court order, upon the Receiver's submission of the Final Declaration.

## II. RELEVANT FACTUAL BACKGROUND.

A full recitation of the procedural history is of this matter is unnecessary for the purposes of this Motion, particularly given that the Receiver's Final Report, which summarizes the Receiver's actions during the pendency of this matter in greater detail, has been submitted concurrently herewith. The facts relevant to the Motion are as follows:

Plaintiffs the Federal Trade Commission and California Department of Financial Protection and Innovation (collectively, the "Regulators") filed their Complaint in this matter on September 12, 2022. (ECF No. 1.) The Complaint alleged that the Receivership Entities and their principals engaged in a mortgage modification scheme whereby the Entities' customers, distressed mortgage borrowers, were fraudulently induced to make payments to the Entities in exchange

for loan modification services which were rarely, if ever, provided, and the proceeds from which were diverted by the Receivership Entities and their principals for their unilateral benefit. (*Id.*) Among other relief, the Regulators sought the appointment of a receiver, which this Court granted by way of the Appointment Order. (*See* Plaintiffs' Ex Parte Application for Temporary Restraining Order With Assert Freeze, Appointment of Temporary Receiver, Limited Expedited Discovery, and Order to Show Cause Why Preliminary Injunction Should Not Issue [ECF No. 9]; Appointment Order [ECF No. 25].)

Pursuant to the Appointment Order, the Receiver was charged with, among other things, assuming control of the Receivership Entities, marshaling Receivership Assets, performing an investigation into, and accounting of, the business and financial activities of the Receivership Entities, preparing reports for the Court, and otherwise administering the Receivership Entities. (ECF No. 25 at 16:20-19:4.)

Since his appointment, the Receiver has administered the Estate and all Receivership Assets in accordance with this Court's instructions, including specifically: (1) marshaling, preserving, and liquidating Receivership Assets; (2) obtaining documents critical to the Receiver's investigation via informal and formal document requests, including the issuance of multiple subpoenas; (3) performing an accounting and analysis of the Receivership Entities' operations (or lack thereof), financial activities, and condition; and (4) preparing periodic reports to this Court. (*See* concurrently filed Declaration of David P. Stapleton ["Stapleton Decl."] ¶ 3-4; ECF Nos. 36, 60, 158, 247, 290, and 325.) The specific actions undertaken during the course of the Receiver's appointment have been detailed in the Receiver's interim reports, one supplemental report, and the concurrently submitted Final Report. By way of short summary, the Receiver's most significant efforts and achievements included:

- Completing an exhaustive document discovery process, resulting in the recovery of tens of thousands of pages of documents, and undertaking a

review of such documents in order to complete an appropriate analysis and accounting;

- Substantially confirming the Regulators' allegations regarding the alleged fraud operated through the Entities, and determining that the Entities could not be operated as a viable going concern;

- Identifying and designating an additional Receivership Entity, the Michael R. Nabati Irrevocable Living Trust, which was associated with defendant Michael Nabati, and to whom, or for whose benefit, the Receiver concluded millions in Estate assets were diverted;

- Taking possession of numerous Receivership Assets, and with Mr. Nabati's and the Regulators' consent, preparing for sale and marketing, and ultimately overseeing the sale of four (4) real properties (the "Real Properties") purchased with funds wrongfully diverted from the Entities, resulting in an aggregate recovery of over $3.6 million; and

- Pending this Court's approval, remitting at least $2.8 million, reflecting the net amounts recovered by the Receiver, after the deduction of all administrative fees and expenses, to the Regulators in accordance with whatever instructions they provide, in anticipation of the Regulators establishing a victim restitution fund or otherwise attending to the appropriate disposition of the funds recovered by the Receiver. (*See* Stapleton Decl. ¶ 4.)

The Receiver, having recently completed the sale of all remaining Real Properties subject to his authority or control, has determined, in his reasonable business judgment, that the costs of continuing the receivership at this point would very likely exceed the value of any additional Asset recoveries. (*Id.* at ¶ 5.) Accordingly, the Receiver respectfully recommends that the receivership be wound down and terminated, and the Receiver discharged and released. (*Id.*)

## III.   RECOMMENDED CLOSING AND DISCHARGE PROCEDURES.

### A.   Receivership Wind-Down And Final Closing Tasks.

By this Motion, the Receiver respectfully requests Court approval of, and authorization to complete, the final closing tasks detailed below in connection with closing the instant receivership and securing the Receiver's discharge and release:

#### 1.   Approval of the Receiver's Final Report and Accounting.

The Receiver's Final Report has been submitted to this Court concurrently with this Motion. The Final Report details the efforts undertaken by the Receiver during the pendency of the receivership, including his document review and analysis, accounting, Asset preservation and recovery, and reporting to this Court. The Receiver's final accounting, appended to the Final Report as **Exhibit 1**, reflects the Estate's receipts and disbursements through March 31, 2024. The Receiver respectfully requests that the Court approve his Final Report and the final accounting appended thereto.

#### 2.   Payment of Fees and Expenses of Receiver and his Professionals.

Concurrently with this Motion, the Receiver and Allen Matkins (collectively, the "Applicants") have submitted the Final Fee Application, requesting approval of fees earned and costs incurred by the Applicants during the period from November 1, 2024 through February 29, 2024. The total amount requested in the Final Fee Application is $124,149.97. Detailed narrative summaries of and billing invoices for the work performed by the Applicants are set forth in the Final Fee Application. The Receiver requests authorization to pay the Applicants out of the Assets presently on hand.

#### 3.   Recovery of Outstanding Turnover Amounts.

In its February 2, 2024 *Order Granting Plaintiffs' Motion for Summary Judgment Against Defendants Michael Robin Nabati, Armando Solis Barron, Dominic Ahiga, and Roger Scott Dyer* [ECF No. 323], and *Order Granting Plaintiffs' Application for Default Judgment* [ECF No. 324], this Court directed

certain financial institutions and other entities in possession or control of the judgment debtors' assets to turn over such assets to the Receiver within 10 days of receipt of the orders.  In the Receiver's experience, and as has been the case here, financial institutions tend to proceed very deliberately when making turnover decisions.  As of the date of this Motion, the Receiver has received an additional approximately $78,447 in turnovers associated with the Court's recent orders, but anticipates that additional funds may remain outstanding, which funds may be turned over to the Receiver in the coming weeks.  The Receiver will continue to serve as the designated recipient for any such funds pending the termination of the receivership and will turn over those funds received as part of the Remittance to the Regulators as proposed herein.

4. <u>Turnover of Receivership Assets to the Regulators.</u>

Based on his discussions with the Regulators regarding the best means of making recovered funds available for restitution to injured consumers, the Receiver has concluded that the most cost-effective method of ensuring that recovered Assets are optimally deployed is to turn over the Assets to the Regulators concurrent with the wind-down and termination of the receivership.  In the Receiver's reasonable business judgment, and under the facts of this case, such a course of action would be superior, on a cost-benefit basis, to the alternative of a Receiver-administered claims and distribution process, with its attendant additional expense.

Therefore, the Receiver respectfully requests that the Court authorize him to transfer all Receivership Assets, less the fees and expenses requested in the Final Fee Application, plus the Reserve, to the Regulators in accordance with whatever turnover instructions they may provide to him.  At present, the Receiver estimates that the amount of the Remittance to the Regulators will exceed $2.8 million.

5. <u>Establishment of the Reserve.</u>

The Receiver and Allen Matkins will have incurred additional fees and expenses beyond those requested in the Final Fee Application, after February 29,

2024 and through the end of the receivership, as they attend to the wind-down tasks necessary to bring the receivership to a close after the submission of the instant Motion, Final Report, and Final Application. The Receiver recommends that the Court authorize him to set aside an amount not to exceed $30,000 (again, the "<u>Reserve</u>") to cover such fees and expenses, to be paid without further order of the Court. Of course, the Receiver and Allen Matkins will endeavor to minimize their respective fees and expenses and, any portion of the Reserve remaining after all closing tasks have been completed will be turned over to the Regulators, as part of the Remittance, in accordance with whatever turnover instructions the Regulators ultimately provide the Receiver.

6. <u>Abandonment or Destruction of Records.</u>

The Receiver is in possession of records obtained during his administration of the Estate, either at the outset of the receivership or recovered from third parties during his investigation into the affairs of the Receivership Entities, some of which are maintained in paper form. Many of these documents contain the personal financial information, or other sensitive information, of mortgage borrowers who sought the services of the Receivership Entities. Accordingly, the Receiver proposes that, within 90 of days after the entry of an order granting this Motion, the Receiver be authorized to destroy any documents containing private information, and further that he be authorized to abandon or destroy the balance of the records in his possession relating to the Receivership Entities and the present receivership.

7. <u>Completing Outstanding Closing Tasks for the Receivership and Discharging and Releasing Receiver.</u>

The Receiver respectfully requests that, once he has completed the above-identified closing tasks, this Court thereafter close the present receivership case and discharge and release the Receiver, effective upon the Receiver's submission of the Final Declaration.

## IV. ARGUMENT.

### A. The Proposed Final Closing Tasks Should Be Authorized And The Receiver Discharged And Released.

A court's power to administer an equity receivership is extremely broad. *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986); *SEC v. Forex Asset Mgmt., LLC*, 242 F.3d 325, 331 (5th Cir. 2001); *SEC v. Basic Energy & Affiliated Res.*, 273 F.3d 657, 668 (6th Cir. 2001); *SEC v. Elliot*, 953 F.2d 1560, 1566 (11th Cir. 1992); *SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991). In the absence of controlling authority, and where applicable, district courts supervising equity receiverships routinely look to bankruptcy law for guidance. *SEC v. Am. Capital Invs.*, 98 F.3d 1133, 1140 (9th Cir. 1996); *CFTC v. Topworth Int'l*, 205 F.3d 1107, 1116 (9th Cir. 1999) (Central District local rules, for instance, "direct receivers, unless otherwise ordered … to 'administer the estate as nearly as possible in accordance with … the administration of estates in bankruptcy.'"); *Fleet Nat'l Bank v. H&D Entm't*, 926 F.Supp. 226, 240 n. 56 (D. Mass. 1996) ("[W]hat is permitted under the Bankruptcy Code, generally is, *a fortiori*, permissible under receivership law.").

In the fiduciary estate administration context, courts are deferential to the business judgment of bankruptcy trustees, receivers, and similar estate custodians. *See, e.g., Bennett v. Williams*, 892 F.2d 822, 824 (9th Cir. 1989) ("[W]e are deferential to the business management decisions of a bankruptcy trustee."); *Sw. Media, Inc. v. Rau*, 708 F.2d 419, 425 (9th Cir. 1983) ("The decision concerning the form of … [estate administration] … rested with the business judgment of the trustee."); *see also SEC v. Health Maint. Ctrs., Inc.*, 2002 WL 34388014 (W.D. Wash. 2002) (Equating bankruptcy trustees with receivers and finding that "the courts have overwhelmingly applied a 'business judgment' test" to estate administration.); *In rethinking Machs. Corp.*, 182 B.R. 365, 368 (D. Mass. 1995) ("The application of the business judgment rule … and the high degree of deference

usually afforded purely economic decisions of trustees, makes court refusal unlikely.") (rev'd on other grounds, 67 F.3d 1021 (1st Cir. 1995)).

As reported herein and in the concurrently submitted Final Report, the Receiver has made all reasonable and necessary efforts to recover, review, and analyze Receivership Entity business records, provide an accounting of the Receivership Entities' financial activities, recover available Receivership Assets, and monetize such assets so as to create a pool of funds that may be deployed in an equitable distribution to creditors. The Receiver's conclusion that it is now appropriate to close the receivership and discharge and release the Receiver has only been reached after a series of successful Asset recovery efforts and a comprehensive investigation of the operational and financial activities of the Receivership Entities and a subsequent reporting. The Receiver's recommendation that the receivership should now be wound down and the Receiver discharged and released should be afforded great the deference ordinarily accorded to the business judgment of bankruptcy trustees, receivers, and similar estate custodians.

**B.  The Final Fee Application Is Reasonable And Appropriate, And Payment Of All Outstanding Fees and Expenses Should Be Authorized At This Time.**

"As a general rule, the expenses and fees of a receivership are a charge upon the property administered." *Gaskill v. Gordon*, 27 F.3d 248, 251 (7th Cir. 1994); *accord Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 374 (1908). The fees and expenses of a receivership include the fees and expenses reasonably incurred by the receiver in administering his or her duties, as well as the fees and expenses reasonably incurred by the receiver's professionals in rendering services to the receiver. *See Drilling & Expl. Corp. v. Webster*, 69 F.2d 416, 418 (9th Cir. 1934). Decisions regarding the amount and timing of an award of receivership fees and expenses are committed to the sound discretion of the district court. *See Elliott*, 953 F.2d at 1577. Furthermore, the district court has "broad powers and wide discretion in crafting

relief," including in "distributing receivership assets." *Quilling v. Trade Partners, Inc.*, 572 F.3d 293, 301 (6th Cir. 2009).

    1.    <u>The Fees and Expenses Requested in the Final Fee Application are Reasonable.</u>

The fees of a receiver and his professionals must be reasonable. *See In re San Vicente Med. Partners, Ltd.*, 962 F.2d 1402, 1409 (9th Cir. 1992). In determining the reasonableness of the fees and expenses requested in connection with a receivership, a court should consider the time records presented, the quality of the work performed, the complexity of the problems faced, and the benefit of the services rendered to the receivership estate. *See SEC v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973).

Here, the Final Fee Application describes the nature of the services that have been rendered by the Applicants and, where appropriate, the identity and hourly billing rate of the individual performing each specific task. The Applicants have endeavored to staff matters as efficiently as possible in light of the level of experience required and the complexity of the issues presented, including with respect to specific legal advice sought by and provided to the Receiver. Additionally, the Receiver and Allen Matkins have both agreed to apply significant, across-the-board discounts to their standard billing rates for this engagement. The Receiver has agreed to apply a 10% discount to his and his staff's hourly rates. Allen Matkins has agreed to apply a discount of 15% to all attorney and staff hourly rates for this matter, and not to bill for travel time.

The Receiver has reviewed the Fee Application and believes the fees and expenses requested by the Applicants to be fair and reasonable and consistent with the work performed. The Receiver likewise believes that the Estate has benefited from the services identified in the Final Fee Application.

2. <u>The Fees and Expenses Incurred in the Receivership Satisfy the Ninth Circuit Standard for Presumptive Reasonableness.</u>

Courts in the Ninth Circuit use either the "percentage of fund" calculus or apply the "lodestar" method to determine whether a fiduciary fee request is appropriate. *See, e.g., Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 609 (9th Cir. 1997). The "percentage of fund" determines an appropriate fee as a percentage of funds recovered. *Powers*, 229 F.3d at 1256. In evaluating the propriety of a fee request with reference to the total funds recovered, the Ninth Circuit has established a benchmark of 25% as presumptively reasonable. *See, e.g., Powers*, 229 F.3d at 1256-57; *see also Petroleum Prods.*, 109 F.3d at 607 (25% determined to be an appropriate benchmark in common fund matters).

An application of the "lodestar" method requires multiplying the number of hours reasonably required for the services performed by the movant's reasonable hourly fee to arrive at the so-called lodestar amount. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 888 (1984). Once the lodestar amount is calculated, a court can then adjust fees up or down depending on context and relevant factors, including the expertise of counsel, complexities of litigation and risks involved, the relation of fees to total recovery (essentially, a "percentage of fund" correction), and other factors. *In re San Vicente Med. Partners, Ltd.*, 962 F.2d 1402, 1410 (9th Cir. 1992).

Here, as reflected in the Receiver's Final Report, the Receiver's total recoveries for the benefit of the Estate, and its investors and creditors, have exceeded $3.6 million. By way of the Final Fee Application, the Receiver and Allen Matkins have requested that the Court approve the payment of a total of $154,149.97 in fees and expenses, inclusive of the Reserve, bringing the total amount of fees and expenses requested for payment in this matter to approximately $663,300. As compared to the more than $3.6 million in Assets recovered by the

Receiver during the pendency of his appointment, this amount reflects less than 19% of the total, well below the 25% threshold addressed in *Powers*.

Accordingly, the Receiver respectfully submits that his and Allen Matkins' collective fees and expenses are presumptively reasonable. An application of the lodestar method to the fees and cost incurred to date likewise supports the Final Fee Application, particularly given the complexity of the business and financial activities of the Entities, the lack of documentation initially available to the Receiver and the resultant investigation and forensic accounting he was required to undertake, and the Receiver's success in identifying, taking possession of, and maximizing the value of the Receivership Assets. The Receiver therefore respectfully requests that the Court grant the Final Fee Application and approve the fees and expenses requested therein.

### 3. The Fees and Expenses Requested in the Final Fee Application have been Submitted to the Regulators, Without Objection.

With respect to compensation requests made by a receiver, courts give great weight to the judgment and experience of the regulatory agency involved in the underlying action. As one court has noted in a bankruptcy case in which the Securities and Exchange Commission was a party, "it is proper to [keep] in mind that the [plaintiff regulator] is about the only wholly disinterested party in [this] proceeding and that … its experience has made it thoroughly familiar with the general attitude of the Courts and the amounts of allowances made in scores of comparable proceedings." *In re Phila. & Reading Coal & Iron Co.*, 61 F. Supp. 120, 124 (E.D. Pa. 1945). Indeed, the Regulators' positions are not "mere casual conjectures, but are recommendations based on closer study than a district judge could ordinarily give to such matters." *Finn v. Childs Co.*, 181 F.2d 431, 438 (2d Cir. 1950) (citation omitted) (internal quotation marks omitted). These "recommendations as to fees of the [government agency] may be the only solution to the very undesirable subjectivity with variations according to the particular judge

under particular circumstances which has made the fixing of fees seem often to be upon nothing more than an ipse dixit basis." *Id.* (citation omitted) (internal quotation marks omitted). Accordingly, the Regulators' position on a fee request should be "given great weight." *Fifth Ave. Coach Lines*, 364 F. Supp. at 1222.

Here, in order to ensure that the fees and expenses requested in the Final Fee Application are reasonable and appropriate, the Applicants submitted a draft of the Final Fee Application, along with their respective invoices, to the Regulators for review and comment prior to filing. After a review of the Final Fee Application and a discussion with the Receiver's office and Allen Matkins, the Regulators confirmed they do not oppose the Final Fee Application. The Regulators are likely in the best position to measure the fees and expenses requested in the instant receivership against those incurred in other, similar proceedings and cases of similar complexity, *see Phila. & Reading Coal & Iron*, 61 F. Supp. at 124, and a decision on their part not to object to the Final Fee Application merits significant deference. *Id.* Accordingly, the Applicants respectfully request that the Court approve the fees and expenses as sought in the Final Fee Application.

### 4. The Receiver Should be Authorized to Pay Allowed Fees and Expenses from Cash on Hand.

As reflected in the Final Fee Application, the Receiver has requested that the Court authorize the payment of his requested fees and expenses for the period from November 1, 2024 through February 29, 2024 in the amount of $62,080.73, and payment of Allen Matkins' requested fees and expenses for the same period in the amount of $62,069.24. The Receiver presently holds in excess of $3 million for the benefit and administration of the Estate, and he respectfully requests that the Court permit him to make payment of the fees and expenses requested in the Final Fee Application from cash on hand.

## V. CONCLUSION.

Based on the Receiver's cumulative findings and the fulfillment of his duties under the Appointment Order and other Court orders in this receivership case, the Receiver respectfully requests that this Court enter an order:

1. Approving the Final Report and Accounting, along with the actions taken by the Receiver during the pendency of his appointment.

2. Authorizing the payment of the Final Fee Application in the respective amounts of $62,080.73 payable to the Receiver, and $62,069.24 payable to Allen Matkins;

3. Authorizing the Receiver to establish a Reserve in the amount of $30,000;

4. Authorizing the Receiver, after the payment of authorized costs, fees and expenses, to make the Remittance to the Regulators;

5. Authorizing the Receiver to abandon or destroy, as appropriate, all Receivership Entity records in his possession, within 90 days after his discharge as receiver;

6. Authorizing the Receiver to undertake and complete those tasks necessary to wind-down and close the receivership, as detailed further below, and thereafter closing the instant receivership and discharging and releasing the Receiver, effective upon receipt of a Declaration from the Receiver confirming the completion of all closing tasks.

Dated: April 1, 2024

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
DAVID R. ZARO
JOSHUA A. DEL CASTILLO
MATTHEW D. PHAM

By:     /s/     *Joshua A. del Castillo*
    JOSHUA A. DEL CASTILLO
Attorneys for Receiver
DAVID P. STAPLETON